[No. B032021. Second Dist., Div. One. June 30, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
CARTER TERRELL MOORE, Defendant and Appellant.

COUNSEL

Harvey R. Zall, State Public Defender, under appointment by the Court of Appeal, and Patricia A. Castillo, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Mark Alan Hart and Donald J. Oeser, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SPENCER, P. J.—

### INTRODUCTION

Defendant Carter Terrell Moore appeals from a judgment of conviction entered after a jury trial. The jury found defendant guilty of one count of committing a lewd act upon a child under the age of 14 during which defendant engaged in substantial sexual conduct (Pen. Code, §§ 288, subd. (a), 1203.066, subd. (a)(8) & (9)), one count of attempted oral copulation with a person under the age of 14 (Pen. Code, §§ 664/288a, subd. (c)), five counts of rape (Pen. Code, § 261, subd. (2)), two counts of oral copulation with a person under the age of 14 (Pen. Code, § 288a, subd. (c)), one count of forcible oral copulation (*ibid.*) and three counts of sodomy (Pen. Code, § 286, subd. (c)). Thereafter, the trial court found defendant previously had been convicted of a felony within the meaning of Penal Code section 667, subdivision (a). Defendant was sentenced to state prison for a total of 45 years.

### STATEMENT OF FACTS

Defendant, M.'s father, returned home after a term of imprisonment when M. was nine or ten years old. Shortly before Christmas in 1983, when

M. was in the third grade, she was on a bed with defendant in the apartment she shared in Pomona with her parents. Defendant put his toes between her legs. In January 1984, while relatives were visiting the apartment, M. slept on the floor with defendant. He asked her to perform an act of oral copulation, pushing her head in the direction of his penis, but M. bit his finger and defendant released her. He told her men in Africa had five or ten wives at one time. M. told her mother about this incident; her mother repeated this information to M.'s maternal grandmother, but neither of them took any steps as a result.

In approximately the middle of M.'s 1984-1985 fourth grade school year, M. moved with defendant to her grandparents' home in Lynwood, where she and defendant shared a bedroom. Once, while M. was doing her homework, defendant came into the room and sat on the bed. He began tugging on her arm and told her he should have whipped her for some things she had done, then he told her to lie on the bed; M. complied. Defendant began pulling down her clothing. When M. attempted to stop him, he said he was going to whip her (meaning hit her with a belt or strap), so she stopped resisting. After defendant pulled down her underclothing, while she was lying on her side, defendant lay on the bed behind her and initiated an act of sexual intercourse. M. told him this hurt. Defendant had sexual intercourse with her on the following day and thereafter from two to three times a week during the remainder of her fourth grade year. To escape him, M. attempted to sleep with cousins who used another bedroom but defendant came and got her.

In May 1985, defendant quarrelled with M.'s uncle, after which he and M. resided in several hotels in Signal Hill throughout the summer of 1985. On M.'s 13th birthday, May 22, 1985, defendant bought her a birthday cake and ice cream. When they went to bed, he had sexual intercourse with her, even though she asked him not to do so because it was her birthday. While they were living in Signal Hill, defendant had sexual intercourse with her almost every night. Periodically, she would attempt to resist him. When she did so, defendant, who was trained in karate, would strike her in the stomach and rib cage with karate-type movements. During this same period, defendant asked M. to perform acts of oral copulation; she did this on three or four occasions.

In August 1985, defendant and M. moved to an apartment in Long Beach. Just before M. began her fifth grade school year, during her menstrual period, defendant again had sexual intercourse with her. This time he ejaculated, something he had promised her he would never do. Some time after school started that fall but before Thanksgiving, defendant performed an act of sodomy. He did this on three separate occasions. Later, M. told

him this made her feel as if she were going to have a bowel movement and complained to him about the pain she felt. In response, defendant looked at her with great anger, as though he was going to "jump on" her. Defendant continued to have sexual relations with M. during the remainder of her fifth grade school year.

By the time M.'s sixth grade school year began, she and defendant had returned to live in her grandparents' home in Lynwood. On one occasion during this time, defendant asked her to perform an act of oral copulation, asserting that M. did this better than a girlfriend would. Defendant placed a chair against the bedroom door and sat on it. They agreed she would perform an act of oral copulation for five minutes, but he insisted that she continue beyond that time. On a later occasion, defendant again had her perform an act of oral copulation; he ejaculated in the process, something he had said he would not do. During this period, M. told her paternal grandmother, her cousin Randi and Uncle Ronnie that defendant was "messing with" her, but no one took any steps to protect her.

Throughout this period, M. engaged in sexual relations with defendant against her will. She submitted because she was afraid of him. He threatened her and told her he would kill her if she ever told anyone about these incidents. M. was well aware of her father's temper and violence. When she was four years old, she had seen him kill a man by stabbing; he spent five years in prison for this.

On October 26, 1986, defendant was having difficulty performing sexual intercourse and hence made M. perform an act of oral copulation. On the following day, she was crying in her classroom; this prompted her teacher, Ms. Williams, to take her out into the hallway. Mrs. King walked by and asked whether M. wanted to talk to her. After some initial reluctance, M. told Mrs. King what had happened the previous night; M. then talked to the principal and a police officer who was called to the school. The police officer took her to a hospital for an examination. Dr. Dora Burchette discovered damage to M.'s hymen; there were old tears at three locations and four bands of scar tissue extending from the hymen to the interior vaginal lips. In addition, M.'s hymenal orifice was larger than normal; it had an irregular border, very scarred and torn, and there was redness at and inside of the vaginal lips. The scars were at least two weeks old, but Dr. Burchette could not date them with any greater precision. The scarring and old tears were consistent with repeated trauma, including sexual abuse. The redness indicated recent trauma. Dr. Burchette did not examine M.'s anal area.

### DEFENSE

Defendant denied ever touching M. in the vaginal area or asking her to perform oral copulation. He and M. had had a dispute over sleeping

arrangements; M. wanted to sleep in the garage with her cousins, but defendant refused to permit this because his brother also shared the garage. This upset M. In defendant's view, he was a good father; he was strict and would not permit M. to date. When she came to live with him, her grades improved. Shortly before defendant's arrest, he and M. had other clashes of temperament. Defendant attributed these to M.'s jealousy of his girlfriend, from whom he ultimately separated because of the friction M. caused.

Two social workers who visited M. while she was living with her father observed no signs that she was being subjected to defendant's sexual molestation. She never gave any indication this sort of thing was happening.

## CONTENTIONS

### I

Defendant contends the trial court erred prejudicially in failing to instruct the jury that penetration was an essential element of forcible sodomy.

### II

Defendant asserts there is insufficient evidence to support more than one conviction of sodomy or to support the conviction of rape between June 1, 1985, and August 31, 1985, as charged in count 4.

### III

Defendant further asserts the trial court erred prejudicially, as to the forcible rape charged in count 4, in failing to instruct the jury sua sponte with CALJIC No. 17.01.

### IV

Defendant contends the trial court improperly imposed full consecutive sentences pursuant to Penal Code section 667.6, subdivision (d), on counts 5, 7, 8, 9, 10 and 12.

### V

Finally, defendant contends the trial court erred in calculating the credit against his sentence to which he was entitled for time served in presentence custody.

DISCUSSION

I

██ Defendant contends the trial court erred prejudicially in failing to instruct the jury that penetration was an essential element of forcible sodomy. We disagree.

██ The trial court has a duty, sua sponte, to instruct the jury correctly on all essential elements of the crimes charged. (*People* v. *McNiece* (1986) 181 Cal.App.3d 1048, 1057 [226 Cal.Rptr. 733], review den. Sept. 11, 1986, disapproved on other grounds in *People* v. *McFarland* (1989) 47 Cal.3d 798, 805 [254 Cal.Rptr. 331, 765 P.2d 493]; *People* v. *Birreuta* (1984) 162 Cal.App.3d 454, 462 [208 Cal.Rptr. 635].) The failure to so instruct is error whenever there is any evidence deserving of any consideration from which the jury could have found in the defendant's favor on the omitted element. (*Ibid.*) Any such error must be harmless beyond a reasonable doubt. (*People* v. *Dyer* (1988) 45 Cal.3d 26, 62-64 [246 Cal.Rptr. 209, 753 P.2d 1], cert. den. (1988) 488 U.S. 934 [102 L.Ed.2d 347, 109 S.Ct. 330].)

██ Penetration is an essential element of the crime of forcible sodomy. (*People* v. *Martinez* (1986) 188 Cal.App.3d 19, 23-25 [232 Cal.Rptr. 736]; *People* v. *McElrath* (1985) 175 Cal.App.3d 178, 185 [220 Cal.Rptr. 698], review den. Feb. 20, 1986.) ██ In the instant matter, the trial court instructed the jury, in accord with CALJIC No. 10.50.2, that "[s]odomy is sexual conduct consisting of contact between the penis of one person and the anus of another person." However, the court failed to give the jury the additional instruction, embodied in CALJIC No. 10.52, that "[a]ny sexual penetration, however slight, is sufficient to complete the crime of sodomy." If there is any evidence deserving of any consideration from which the jury could have found there was no penetration, this failure was error. (*People* v. *Birreuta, supra,* 162 Cal.App.3d at p. 462.)

The sole defense proffered to any of the offenses in this case was denial, augmented by an attack on M.'s credibility. That denial, if believed, would be a *complete* defense to the charges of sodomy, but would not in any manner serve to negate solely the element of penetration.

In asserting there nonetheless was error here, defendant relies on *People* v. *McElrath, supra,* 175 Cal.App.3d 178. In *McElrath,* after the alleged offenses occurred, the victim was examined by a physician and vaginal and anal swabs were taken. There was evidence of vaginal trauma and of semen on the vaginal swab. However, there was no evidence of trauma to the anal area and there was no semen on the anal swab. (At p. 185, fn. 4.) On these

facts, the *McElrath* court concluded penetration was at issue, thus necessitating an instruction on penetration. (*Ibid.*) Obviously, this was correct: given the physical evidence of vaginal penetration, the jury reasonably could have concluded the lack of any such evidence concerning anal penetration created a reasonable doubt as to whether the defendant penetrated the victim's anus. However, there is no similar evidence in the instant matter: while M. received a vaginal examination, Dr. Burchette did not examine her anal area.

M. testified these offenses took place in 1985, after the beginning of her fifth grade school year but before the Thanksgiving holiday. Defendant tried to place his penis in her rectum; he had her get on her knees and approached her from the rear. He did not actually place his penis inside her rectum, but pushed against her anus. This triggered a defecation reaction and caused her some pain. Other than defendant's denial that these events took place, there is no other evidence relating to the sodomy charges.

Defendant characterizes this evidence as substantially identical to that proffered in *People* v. *Martinez, supra,* 188 Cal.App.3d 19. In *Martinez,* the victim testified the defendant tried to place his penis in her rectum. When she was asked whether she knew if it went in or how far, she answered in the negative. She said she could feel it and it hurt. (At p. 25.) The court concluded, while this evidence would permit an inference of some slight penetration, it would not compel the inference to be drawn; thus, it was error to fail to instruct on penetration. (*Id.* at pp. 25-26.)

The People note there is a difference, which they deem significant, between the evidence presented in *Martinez* and the evidence presented here. In the instant matter, there is M.'s testimony that the act triggered a defecation response, i.e., made her feel as if she were going to have a bowel movement. In the People's view, this evidence compels a finding of at least slight penetration. We find merit in this view. While forceful pressure against the anus might cause some pain without actual penetration, nothing short of at least slight penetration would trigger a defecation reaction. Indeed, this theory was argued to the jury.[1] Since the evidence presented here is consistent *only* with a finding of at least slight penetration, the trial court did not err in failing to instruct the jury on necessity for penetration.

## II

Defendant asserts there is insufficient evidence to support more than one conviction of sodomy or to support the conviction of rape

---

[1] The prosecutor stated: "It amounted to partial penetration. . . . Clearly, you wouldn't have had pain, or the defecation reaction at all, unless there had been considerable pressure applied."

between June 1, 1985, and August 31, 1985, as charged in count 4. Again, we disagree.

■ Defendant makes two claims of insufficiency as to the sodomy counts. First, he argues there simply is no substantial evidence there were *three* incidents of sodomy. After M. described the act, as delineated *ante,* the prosecutor asked her, "About how many times did he try that?" M. responded, "Three." She had the same feelings, earlier described, each time he did this. Defendant focuses on the form of the prosecutor's question, specifically the query, *"About* how many times . . . ." This, he asserts, provides no basis other than speculation or conjecture to support a conclusion there *were* three separate acts; thus, there is no substantial evidence, i.e., that which is solid and credible, to support three convictions. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110].)

To be sure, the form of the prosecutor's question is regrettable. However, M. did not answer with an approximation or state she *thought* it was three times. Thus, there is a reasonable basis from which the jury could have concluded there were three separate acts.

■ Defendant's next argument is aimed primarily at the forcible rape conviction on count 4. Count 4 of the information alleged that some time from June 1, 1985, to August 31, 1985, defendant accomplished an act of sexual intercourse with M. by means of force and fear of immediate and unlawful bodily injury to herself or to another. According to M., she and defendant moved to Signal Hill in the late spring of 1985, where they lived in a series of hotels until some time in August. No one else resided with them. While they were living in the Signal Hill hotels, defendant had sexual intercourse with her almost every night; whenever she attempted to resist defendant's sexual advances, defendant, who had karate training, hit her in the stomach or rib cage with "karate-type" movements. M. was able to relate only one specific incident of sexual intercourse to a date or an event during this period, the one that occurred on her birthday, May 22, 1985. This incident was the subject of count 13.

In arguing count 4 must be reversed for insufficiency of the evidence, defendant relies on *People* v. *Atkins* (1988) 203 Cal.App.3d 15 [249 Cal.Rptr. 863], an opinion from the Fifth District. *Atkins,* authored by Justice Ballentyne, holds the prosecution must prove *a* specific act, marked by a distinguishing characteristic, to constitute the crime with which the defendant is charged. In actuality, *Atkins* concerns a problem of due process more than of sufficiency of the evidence. (*People* v. *Vargas* (1988) 206 Cal.App.3d 831, 848 [253 Cal.Rptr. 894], review den. Apr. 5, 1989.)

In *Atkins,* the Fifth District court considers for the second time the problem of the "resident child molester," a category into which defendant falls inasmuch as he is M.'s father and all the charged offenses occurred while she was living with him. The court notes: "The 'resident child molester' cases pose perplexing questions. They involve two very important, yet somewhat conflicting, considerations. One overriding concern is that a child who has been molested on a regular basis and in a consistent manner might not have a meaningful reference point of time or detail by which to distinguish one specific act from another. The concern is that this problem will be exacerbated the more frequent and repetitive the molestation and the younger the victim. Thus, the prosecution's ability to establish one or more specific acts via the testimony of the minor victim decreases. Since minor children are usually molested outside the presence of witnesses and many of these acts leave no permanent physical evidence, the testimony of the minor victim may be the only evidence on which the prosecution can base its case. To render such testimony inadequate as a matter of law under circumstances like those here under discussion could effectively insulate the most egregious child molesters from prosecution.

"The other consideration is predicated upon fundamental notions of due process . . . . 'Emerging from recent cases dealing with the problems arising when a crime is charged and the evidence describes several acts, any one of which could constitute the crime charged, "is the so-called 'either/or' rule: . . . *either* the prosecution must select the specific act relied upon to prove the charge *or* the jury must be instructed in the words of CALJIC No. 17.01 . . . or [the] equivalent that it must unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act. [Citations.]" [Citation.]' *(People* v. *Callan* (1985) 174 Cal.App.3d 1101, 1111, fn. omitted . . . .)

"While the 'either/or' rule as stated above will cure a failure of election by the prosecution in the usual case where evidence of several specific acts is presented, any one of which could constitute the crime charged, the rule can have no application to counts where there is a failure to present evidence of *any* specific act to support the charged crime. Where, as here, the evidence is that many of such acts were committed over an extended period of time yet there is no testimony of a specific act, it would be impossible for the prosecution to 'select the specific act relied upon to prove the charge' and equally impossible for the jury to 'unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act.' *(Ibid.)*" *(People* v. *Atkins, supra,* 203 Cal.App.3d at pp. 19-21, fn. omitted, italics original.) The court in *Atkins* continues: "Implicit in the cases requiring specificity of charges and the charges being supported by specific testimony given at trial is the fundamental due process rule, steeped in antiqui-

ty, that the prosecution must prove a specific act and the 12 jurors must agree on 1 specific act." (*Id.* at p. 22.) Thus, in the absence of such proof, a conviction must be reversed.

The analysis employed in *Atkins* has its genesis in another Fifth District case, also authored by Justice Ballentyne, *People* v. *Van Hoek* (1988) 200 Cal.App.3d 811 [246 Cal.Rptr. 352], review denied August 18, 1988. *Van Hoek* employs substantially identical language to that used in *Atkins.* (*Van Hoek, supra,* 200 Cal.App.3d at pp. 814-816, 817.) In addition, *Van Hoek* notes: "A serious problem with the vague charges and the testimony upon which they are based is that the defendant's ability to defend is severely hampered. A 'resident child molester' would virtually be precluded from presenting an alibi defense to the acts unless he could account for every time he was in the presence of the victim. In the instant case, defendant, because he was the victim's father and lived in the household, has no idea what specific time or specific act he has to defend against. The defendant would virtually have to account for every day of the last five years during which he had contact with [the victim] to enable him to present any kind of alibi defense. [¶] Also, the defendant is precluded from attacking the victim's testimony in any way other than a general attack. The defendant is unable to attack specifics of the act to undermine the victim's credibility as to certain details which might convince the jury that the particular act did not occur as testified to by the victim." (*Id.* at p. 817.) Hence, *Van Hoek* concludes, due process considerations mandate reversal.

In *Van Hoek,* the court did not bar retrial on the reversed counts, but in *Atkins,* it did. After reiterating the due process rationale of *Van Hoek, Atkins* states: "Here, the prosecution neither charged an offense specific as to time, place or other particular, nor did it prove a specific offense with regard to counts II and V. . . . [T]here is not substantial evidence to prove the specific offenses in counts II and V." (203 Cal.App.3d at p. 23.)

The Fifth District court thereafter criticized this result in *People* v. *Vargas, supra,* 206 Cal.App.3d 831, authored by Justice Ardaiz. While agreeing the evidence is insufficient, the court does so "*only* under compulsion of this court's recent opinions in *People* v. *Atkins* [, *supra,*] 203 Cal.App.3d 15 . . . and *People* v. *Luna* (1988) 204 Cal.App.3d 726 . . . . Absent precedent from this court, we would conclude that, although the failure to provide evidence of a distinguishing characteristic denied defendant due process, the testimony was nonetheless sufficient to support conviction as to these counts. . . . Without analysis, other than a rote reiteration of *Van Hoek,* the *Atkins* court concluded that in the absence of a distinguishing characteristic the prosecutor failed to 'meet his burden to prove a specific offense with regard to counts II and V. Such a failure results in our finding that there is

insufficient evidence to support these counts, and *the judgment must be reversed as to these counts with retrial barred.*' (*Atkins, supra,* at p. 19, [italics] added.) In *Luna,* the court restated the above quoted language in *Atkins* and reversed three counts on which the People failed to present evidence of a distinguishing characteristic. (*Luna, supra,* 204 Cal.[App.3d] at p. 743.)

"Through this unfortunate language in *Atkins* and *Luna, Van Hoek*'s requirement of evidence of a distinguishing characteristic has been transformed from a due process concern into a problem of insufficiency of the evidence. Neither opinion supports the conclusion that the failure to present evidence of a distinguishing characteristic renders the evidence insufficient to support a conviction. The conclusion that retrial is barred under double jeopardy principles can only be supported either by treating the distinguishing characteristic as an element of the crime or by concluding that in the absence of the distinguishing characteristic, the evidence is insubstantial as to the charged count. Neither alternative is legally supportable." (*People* v. *Vargas, supra,* 206 Cal.App.3d at pp. 848-849.)

In *Vargas,* the court thus concludes that an analysis of a failure to produce evidence of a distinguishing characteristic as rendering the evidence insufficient, "has in effect added an element to the crime—'the distinguishing characteristic fact' element and has usurped a legislative prerogative." (206 Cal.App.3d at p. 851.) The *Vargas* court also rejects the argument that a lack of evidence permitting a distinction between numerous acts renders the evidence insufficient or insubstantial as to the defendant's guilt of any particular act. (*Id.* at p. 853.) As the court notes, this argument "blurs the distinction between substantial evidence that defendant committed the charged act and the due process concerns of . . . *Williams.*" (*Ibid.*) It "overlooks the very real possibility that the jury believed everything the victim said and thus agreed defendant committed all of the acts to which the victim testified. If the jury agreed defendant did all of the acts testified to, it necessarily agreed he committed the single act or acts charged." (*Ibid.*)

The analysis set forth in *Vargas* clearly is correct. Accordingly, even if there are due process problems in the present case concerning count 4, the evidence relating thereto does not thus become insubstantial as a matter of law.

Prior to this line of 1988 cases, Division Three of this district considered the problem of a defendant's right to know and defend against specific charges in the context of the "resident child molester" in *People* v. *Dunnahoo* (1984) 152 Cal.App.3d 561 [199 Cal.Rptr. 796]. After reviewing the long line of cases which had developed the election doctrine (at pp. 568-

570), the court considered the fundamental question of what "fair notice" to the accused enables him to present a defense and avoid surprise—the fundamental purpose of due process of law. (*Id.* at p. 571; accord, *In re Hess* (1955) 45 Cal.2d 171, 175 [288 P.2d 5].)

The *Dunnahoo* court notes: "Whether an accused has been adequately advised depends on the nature of the crime *and the available defenses thereto*. Following an indictment or information, a preliminary hearing, and criminal discovery, a defendant should be sufficiently advised of the charge or charges to be able to plan a defense. If a defense is to be alibi as to all or part, or misidentification, to charges as alleged here, a defendant can request, and force, an election at the outset of a trial or at some time prior to trial, and thereby be protected from surprise. The Supreme Court observed in the recent case of *People* v. *Beeman* (1984) 35 Cal.3d 547, 562-563 . . . , when discussing the adequacy of instructions. that '[u]nder these circumstances, where *the defense centered on the element as to which the jury was inadequately instructed* . . . we cannot find the error harmless.' ([Italics] added.) Such was not the case here." (*Dunnahoo, supra,* 152 Cal.App.3d at p. 571, italics original.)

The court continues: "[Defendant] did not defend on the basis of alibi or identity. Under the circumstances, an alibi or identity defense would be unavailing . . . [Defendant] lived with the victims for an extensive, uninterrupted period, day and night. Such a living arrangement permitted continual access to the vulnerable youngsters, trusting as they were of [defendant] as a . . . parent. . . . In reason, neither alibi nor wrongful identification would ever be offered as a defense. Credibility would be the only issue in these fact situations, and since the prosecution always has the burden of proving guilt beyond a reasonable doubt, an accused can stand mute and attack the credibility of complaining witnesses. [In contrast, w]here the accused is a stranger to the victim and/or the household and allegedly committed a single unlawful act, an alibi or identity defense might be crucial." (152 Cal.App.3d at p. 572.) Accordingly, the defendant suffered no denial of due process.

Division Six of this district recently turned its attention to the problem of a defendant's right to a unanimous verdict in *People* v. *Obremski* (1989) 207 Cal.App.3d 1346 [255 Cal.Rptr. 715], rejecting the reasoning of *People* v. *Van Hoek, supra,* 200 Cal.App.3d 811. In *Obremski,* the court notes the two competing concerns identified in *Van Hoek,* "(1) that a child molested on a regular and frequent basis might not be able to distinguish by time and detail one specific act from another, and that rendering such testimony inadequate as a matter of law 'could effectively insulate the most egregious child molesters from prosecution;' and (2) that the evidence of many

unspecified crimes occurring over an extended period of time makes it impossible for the prosecution to select the specific act to prove the charge and equally impossible for the jury to unanimously agree which specific criminal act the defendant committed beyond a reasonable doubt, thereby creating a fundamental due process problem which cannot be cured by an election or a unanimity instruction." (*People* v. *Obremski, supra,* 207 Cal.App.3d at p. 1352, citation omitted.)

The court then concludes *Van Hoek* "wrongly chose the second consideration as the prevailing one. By holding that the prosecution's failure to charge or prove the defendant committed a particular act on a particular occasion [is reversible error], the court's decision, in its own words, 'effectively insulate[s]' resident child molesters from prosecution in circumstances similar to our own." (207 Cal.App.3d at p. 1352.)

Following the *Dunnahoo* "fair notice" analysis, the *Obremski* court notes: "*Van Hoek* is incorrect because it attempts to fit the crime to the defense instead of fitting the defense to the crime. In cases where the child molester lived with the victim for an extensive, uninterrupted period and therefore had continual day and night access to the vulnerable child, neither alibi [n]or wrongful identification is likely to be a reasonable defense. [Citation.] If the victim of a resident [child] molester is able to testify only to a general sexual interaction with the molester, the molester himself is likely to be similarly handicapped in eliciting from his memory specific details concerning the date, time and place of his activities during the years of his residence with the victim. Forcing the prosecution to an election in this factual situation achieves the anomalous result of subjecting to prosecution only those defendants who select victims with better memories or who are one act offenders." (207 Cal.App.3d at p. 1353.)

Moreover, since credibility is the true issue (207 Cal.App.3d at p. 1353; *People* v. *Dunnahoo, supra,* 152 Cal.App.3d at p. 572), the jury either will believe the child's testimony that the consistent, repetitive pattern of acts occurred or disbelieve it. In either event, a defendant will have his unanimous jury verdict (cf. *People* v. *Meyer* (1988) 197 Cal.App.3d 1307, 1312 [243 Cal.Rptr. 533]) and the prosecution will have proven beyond a reasonable doubt that the defendant committed a specific act, for if the jury believes the defendant committed all the acts it necessarily believes he committed each specific act (cf. *People* v. *Gonzalez* (1983) 141 Cal.App.3d 786, 792 [190 Cal.Rptr. 554]; *People* v. *Crawford* (1982) 131 Cal.App.3d 591, 599 [182 Cal.Rptr. 536]). Time is only an essential allegation if the defense is one of alibi; otherwise, the prosecution need only prove the act alleged was committed before the filing of the information and within the statute of limitations. (*People* v. *Obremski, supra,* 207 Cal.App.3d at

p. 1354; see also *People* v. *Osuna* (1984) 161 Cal.App.3d 429, 433 [207 Cal.Rptr. 641].)

In our view, *People* v. *Obremski, supra,* 207 Cal.App.3d 1346 and *People* v. *Dunnahoo, supra,* 152 Cal.App.3d 561 analyze the problem correctly. (Accord, *People* v. *Slaughter* (1989) 211 Cal.App.3d 534 [259 Cal.Rptr. 437]; see also *People* v. *Avina* (1989) 211 Cal.App.3d 48 [259 Cal.Rptr. 178]; *People* v. *Coulter* (1989) 209 Cal.App.3d 506, 512-514 [257 Cal.Rptr. 391]; petn. for review May 12, 1989.) Accordingly, we hold defendant has suffered no denial of due process as to the rape charged in count 4.[2]

## III

■ Defendant further asserts the trial court erred prejudicially, as to the forcible rape charged in count 4, in failing to instruct the jury sua sponte with CALJIC No. 17.01. The assertion lacks merit.

CALJIC No. 17.01 provides in substantial part: "The defendant . . . may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of the [acts constituting the crime with which he is charged], but in order to find the defendant guilty, all jurors must agree that he committed the same act or acts." When there is evidence of more than one incident from any one of which the jury could conclude the defendant was guilty of a particular offense, it generally is error to fail to give the jury CALJIC No. 17.01 or to instruct it in equivalent language. (*People* v. *Diedrich* (1982) 31 Cal.3d 263, 282 [182 Cal.Rptr. 354, 643 P.2d 971].)

The instruction serves two purposes: (1) it achieves unanimity among the jurors as to the act constituting the crime and (2) it resolves that question beyond a reasonable doubt. (*People* v. *Deletto* (1983) 147 Cal.App.3d 458, 471-472 [195 Cal.Rptr. 233].) "The instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count." (*Id.* at p. 472, italics original.) If such an instruction was required, the error will be prejudicial unless the verdict implies the jury did not believe the only defense offered. (*Id.* at p. 466.) In other words, where there is no reasonable basis, by way of evidence or

---

[2] Defendant appears to be making the same argument concerning the sodomy counts as well. However, in those instances, the only due process concern would be defendant's right to "fair notice." The prosecution charged three counts of sodomy and M. testified an act of sodomy occurred on three separate occasions. Since the jury convicted defendant of each count of sodomy, it necessarily agreed unanimously that each of these acts occurred.

argument, upon which the jury could have distinguished the acts, there is no reason to suspect the verdict was not unanimous. (*Id.* at p. 473.)

There is a split of authority as to whether the instruction is *always* required and the failure to so instruct then is subject to harmless error beyond a reasonable doubt analysis or is *required* only when there is evidence from which the jury possibly could entertain a reasonable doubt as to some, but not all, of the acts. *People* v. *Deletto, supra,* 147 Cal.App.3d at pages 471-473 employs the former analysis, while several cases, some of which emanate from this district, employ the latter analysis. In *People* v. *Winkle* (1988) 206 Cal.App.3d 822 [253 Cal.Rptr. 726], a "resident child molester" case, Division Seven of this district takes the view that the instruction is not required where the victim testifies to repeated incidents of the same acts of sexual molestation, noting the case turned solely on whether the jury believed the victim or the defendant. (At pp. 828, 829.) The *Winkle* court concludes, in such a situation, "it would be confusing for the jury to be given an instruction requiring them to agree on a specific act, when there is no specific act for them to agree upon." (*Id.,* at p. 830.) Division Five of this district reaches the same conclusion in *People* v. *Gonzalez, supra,* 141 Cal.App.3d at page 792. (Accord, *People* v. *Crawford, supra,* 131 Cal.App.3d at p. 599.) Division Four of the First District also reaches this result in a "resident child molester" context in *People* v. *Meyers, supra,* 197 Cal.App.3d at page 1312.

On the other hand, in an anomalous case and in the same context, the Fifth District not only finds the instruction essential where the evidence shows a long-continued course of conduct during a specified time period, but finds the failure to give it is prejudicial error. (*People* v. *Martinez* (1988) 197 Cal.App.3d 767, 775 [243 Cal.Rptr. 66], review den. Apr. 27, 1988.) *Martinez* is the progenitor of the evolving line of reasoning which eventually resulted in *People* v. *Van Hoek, supra,* 200 Cal.App.3d 811 and its progeny. We conclude its reasoning is deeply flawed, while that of *Winkle* and *Meyer* is sound. It follows that the trial court did not err in failing to instruct the jury sua sponte with CALJIC No. 17.01.

## IV

■■■ Defendant contends the trial court improperly imposed full consecutive sentences pursuant to Penal Code section 667.6, subdivision (d), on counts 5, 7, 8, 9, 10 and 12. We disagree.

Penal Code section 667.6, subdivision (d), presently provides in pertinent part: "A full, separate, and consecutive term shall be served for each violation of . . . committing sodomy or oral copulation in violation of Section

286 or 288a by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person if the crimes involve separate victims or involve the same victim on separate occasions." Prior to the amendment of section 667.6 by Statutes 1985, chapter 401, section 1 (urgency, effective July 30, 1985), subdivision (d) required the presence of "force, violence, duress, menace, or *threat of great bodily injury*" (italics added) rather than the less coercive language, "fear of immediate and unlawful bodily injury on the victim or another person." The distinction is crucial, for count 5 is a forcible oral copulation alleged to have occurred in the period from June 1, 1985, and August 31, 1985; since M. was unable to specify with any precision *when* during this period the offense occurred, it must be assumed the more coercive conduct required prior to the amendment is applicable to this count.

At that time, there was a dichotomy between the language of Penal Code sections 286, covering sodomy, and 288a, covering oral copulation, and subdivision (d) of section 667.6. Subdivision (c) of both sections 286 and 288a uses the language "fear of immediate and unlawful bodily injury on the victim or another person," while subdivision (d) of section 667.6 still retained the language "threat of great bodily injury." Since the 1985 amendment of section 667.6, the language of the statutes is congruent. ■ Prior to amendment, however, a verdict finding a defendant guilty of a violation of subdivision (c) of sections 286 and 288a did not necessarily imply the findings necessary to invoke the sentencing provisions of section 667.6, subdivision (d), for fear of immediate and unlawful bodily injury "is a lesser level of coercion than threat of great bodily harm." (*People* v. *Riffey* (1985) 171 Cal.App.3d 419, 423-424 [217 Cal.Rptr. 319]; accord, *People* v. *Reyes* (1984) 153 Cal.App.3d 803, 813 [200 Cal.Rptr. 651]; see also *People* v. *White* (1987) 188 Cal.App.3d 1128, 1135 [233 Cal.Rptr. 772]; *People* v. *Johnson* (1986) 188 Cal.App.3d 182, 186-187 [232 Cal.Rptr. 202]; *People* v. *Reber* (1986) 177 Cal.App.3d 523, 535 [223 Cal.Rptr. 139], review den. May 1, 1986.)

■ In the instant matter, although count 5 was charged in the "great bodily injury" language, the sole instruction given the jury on this count of forcible oral copulation was couched in the "immediate and unlawful bodily injury" language. Hence, it cannot be said the jury's conviction of defendant necessarily carried a finding of the requisite factual element for the imposition of a mandatory full consecutive sentence pursuant to subdivision (d) of Penal Code section 667.6. *People* v. *Riffey, supra,* 171 Cal.App.3d 419 does not discuss a standard of review for the erroneous use of this provision. Neither do the earlier cases of *People* v. *Foley* (1985) 170 Cal.App.3d 1039 [216 Cal.Rptr. 865], review denied November 14, 1985, and *People* v. *Reyes, supra,* 153 Cal.App.3d 803. However, *Riffey* involved offenses carried out at

knifepoint and under threat of death (171 Cal.App.3d at p. 421), while *People* v. *Reber, supra,* involved offenses perpetrated by means of threatened and actual extreme violence (177 Cal.App.3d at pp. 527-528). Hence, both of these cases suggest the error is per se reversible.

*People* v. *Ramirez* (1987) 189 Cal.App.3d 603 [233 Cal.Rptr. 645], review denied April 2, 1987, disagrees. In *Ramirez,* the court finds the error harmless "[w]here it is clear from the evidence and jury findings that the jury could *only* have found that the offenses were committed by force or fear of great bodily harm." (At p. 633, italics original.) This is the better view. As *Ramirez* notes, the error, though appearing to be one of sentencing, "is really in jury instruction—failing to require a clear finding of either force or threat of great bodily harm. It can be argued that this error removed the issue of great bodily harm from the jury's consideration." (*Id.* at pp. 633, 634, fn. 58.) This is precisely the case. Thus, the error must be harmless beyond a reasonable doubt. (*People* v. *Dyer, supra,* 45 Cal.3d at pp. 62-64.)

The evidence here shows M. knew of defendant's temper and prior acts of violence; when she was four years old, she saw him kill a man by stabbing, an offense for which he spent five years in prison. She testified she acquiesced in defendant's sexual demands only because she was afraid of him; he threatened her and said that if she ever told anyone about these incidents, he would kill her. When she tried to resist him, defendant, who was trained in karate, hit her in the stomach and rib cage with "karate-type" movements. He threatened to whip her (hit her through her clothing with a strap or belt) and looked at her angrily as if he would "jump on" her. M. is a child; during this period, she was between the ages of 10 and 13. Taking this factor into account, the foregoing evidence is consistent *only* with a finding that M. submitted through force or fear of great bodily harm. Since the evidence compels the essential conclusion, the error is harmless beyond a reasonable doubt; thus, the full consecutive sentence imposed on count 5 need not be reversed.

There is a different problem with counts 7, 8, 9, 10 and 12. These counts were pleaded in language consistent with both subdivision (c) of Penal Code sections 286 and 288a and subdivision (d) of section 667.6. However, subdivision (c) of sections 286 and 288a provides an alternative basis for guilt. In each instance, the crime may be committed either because the victim is under the age of 14 and is more than 10 years younger than the perpetrator or because it is "accomplished against the victim's will by means of force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victim or another." (Pen. Code, §§ 286, subd. (c), 288a, subd. (c).) Thus, these statutes do not predicate criminal liability solely upon coercive conduct. That a defendant engages in conduct with a minor under the age

of 14 does not necessarily imply the acts were coerced. (*People* v. *Riddle* (1987) 189 Cal.App.3d 222, 232 [234 Cal.Rptr. 369].)

Counts 7, 8 and 9 allege acts of sodomy and are pleaded in terms of the age differential. Count 10 alleges an act of oral copulation and is pleaded in terms of the age differential. Conversely, count 12 alleges an act of oral copulation and, like count 5, is pleaded in terms of the use of force or fear. Because the counts were pleaded under different theories, the jury was instructed on alternative means of determining the defendant's guilt via CALJIC Nos. 10.50.2 and 10.40.2 (1987 New).[3] In large part, the prosecutor stressed to the jury that each of these crimes was shown simply "by virtue of the relative ages."

Ordinarily, in these circumstances, it cannot be assumed the jury based its verdict on one alternative rather than another; generally, the utilization of "implied findings" to resolve the issue is inappropriate. (See *People* v. *Johnson* (1986) 188 Cal.App.3d 182, 188 [232 Cal.Rptr. 202].) In the instant matter, however, we can be certain as to the basis upon which the jury found defendant guilty of count 12 at least. Each of the jury verdict forms was couched in the general terms of the information. Thus, the verdict forms for counts 7, 8 and 9 state the defendant is guilty "of the crime of SODOMY OF PERSON UNDER 14 WITH 10 YRS DIFFERENCE, in violation of PENAL CODE SECTION 286(c)." The verdict form for count 10 similarly states the defendant is guilty "of the crime of ORAL COPULATION OF A PERSON UNDER 14, in violation of PENAL CODE SECTION 288a(c)." In contrast, the verdict form for count 12 states the defendant is guilty "of the crime of *FORCIBLE ORAL COPULATION* in violation of PENAL CODE SECTION 288a(c)." (Italics added.)

Hence, it is unequivocally clear the jury was aware there was a difference between this offense and those charged in counts 7 through 10 and, in this instance, it must find the offense to have been forcible. There is no evidence from which the jury could have based its verdict on the "threat of future retaliation" alternative; the sole such threat was directed at the consequences of the victim *telling anyone* about the sexual episodes, not at

---

[3] CALJIC No. 10.50.2 provides in pertinent part: "Any person who participates in an act of sodomy with another person [who is under 14 years of age and more than 10 years younger than he or she,] [*or*] [when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person,] [*or*] [when the act is accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat] is guilty of . . . violat[ing] . . . Section 286(c) of the Penal Code." (Italics added.) CALJIC No. 10.40.2 uses identical language to state that "[a]ny person who participates in an act of oral copulation . . . is guilty of . . . violat[ing] . . . Section 288a(c) of the Penal Code."

compelling her participation. As noted *ante,* the evidence compels the conclusion M. was subjected to coercion through force or fear not only of inmediate bodily injury, but of *great* bodily injury. Accordingly, any error as to count 12 is harmless beyond a reasonable doubt. (*People* v. *Dyer, supra,* 45 Cal.3d at pp. 62-64.)

The question is no less clear as to counts 7 through 10. As noted above, the verdict forms for these counts are couched in terms of the age differential, and the prosecutor stressed in argument that this was enough for conviction. Thus, we may deem the error harmless as to these counts only if the evidence of force or fear of immediate bodily injury is so strong that the jury could *only* have convicted defendant on this basis. (*People* v. *Ramirez, supra,* 189 Cal.App.3d at p. 633.) The People urge this viewpoint, characterizing the evidence as "overwhelming," and we have adopted it *ante.* M.'s fear of defendant is abundantly clear. Moreover, she did attempt to resist him and assert her desire to not repeat the acts on several occasions. Since the evidence compels the essential conclusion, any error is harmless beyond a reasonable doubt as to these counts also.

V

Finally, defendant contends the trial court erred in calculating the credit against his sentence to which he was entitled for time served in presentence custody. He is correct.

Penal Code section 2900.5, subdivision (a) provides in pertinent part: "In all felony . . . convictions, . . . when the defendant has been in custody, including but not limited to any time spent in a jail . . . , all days of custody of the defendant, . . . including days credited to the period of confinement pursuant to Section 4019, shall be credited upon his term of imprisonment . . . ." Accordingly, defendant is entitled not only to credit for days actually spent in custody but also to good time/work time credits computed at one-half the time he actually spent in presentence custody. (*In re Allen* (1980) 105 Cal.App.3d 310, 315 [164 Cal.Rptr. 319].)

On October 27, 1986, defendant was arrested and taken into custody in relation to the offenses at issue here. He remained in custody from that date until his probation and sentencing hearing, which was held on November 25, 1987. The probation department calculated the amount of time served in presentence custody at 374 days, while the actual time he served is 395 days. Hence, rather than 187 days in conduct credits, defendant is entitled to 197 days. The total in presentence credits to which he is entitled thus comes to 592 days, rather than the 561 days with which the court credited

him. The abstract of judgment must be corrected to rectify this error in calculation.

The judgment is affirmed. The Superior Court is directed to forward a corrected abstract of judgment, showing defendant's entitlement to 561 days in presentence credits, to the Department of Corrections.

Hanson, J., and Ortega, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 27, 1989. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.