Filed 2/20/15  P. v. Garibo CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>ANTONIO AYALA GARIBO,<br><br>      Defendant and Appellant. | E059814<br><br>(Super.Ct.No. RIF1209513)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Mac R. Fisher, Judge. Affirmed.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., Randall Einhorn, and Parag Agrawal, Deputy Attorneys General, for Plaintiff and Respondent.

I

INTRODUCTION

Defendant Antonio Ayala Garibo molested his stepdaughter throughout her

childhood.  A jury convicted defendant of six counts of committing lewd and lascivious acts upon a child under 14 years of age.  (Pen. Code, § 288, subd. (a).)[1]  The trial court sentenced defendant to 18 years in state prison:  the upper term of eight years on count 1, plus five consecutive two-year terms on counts 2 through 6.

On appeal, defendant argues his *Miranda*[2] rights were violated during a custodial interrogation.  Defendant also contends there is insufficient evidence of counts 5 and 6 and the sentences on those counts should be stayed.  Finally, he claims there was prejudicial instructional error.  We reject defendant's contentions and affirm the judgment.

II

STATEMENT OF FACTS

A.  *Prior Incidents*

Jane Doe was born in September 1987.  Between the ages of four or five and seven years old, Jane Doe lived in Anaheim with defendant and her mother and siblings after defendant married her mother.  When Jane Doe was four or five years old, defendant touched her inappropriately during a game of hide-and-go-seek.  Jane Doe and defendant were hiding in her bedroom when he touched her genitals[3] over her clothes.

---

[1]  All statutory references are to the Penal Code unless stated otherwise.

[2]  *Miranda v. Arizona* (1966) 384 U.S. 436.

[3]  Although the term "vagina" is used colloquially, apparently defendant actually touched Jane Doe's external genitalia, not the vagina which is an internal organ.

Jane Doe did not know if defendant's behavior was wrong but she was afraid to tell anyone.

In another incident, when Jane Doe was five years old, she was watching television in the living room when defendant asked her to change into a skirt and to sit next to him on the couch under a blanket. Defendant touched her chest and genitals under her clothes and told her not to tell anyone. In another incident, defendant told Jane Doe to sit on his bed. He displayed his penis and asked her to touch it. She refused and ran away because she was scared.

When Jane Doe was eight or nine years old, she remembered waking up five or six times in the morning without any clothes on, confused because she had gone to bed wearing her pajamas. One night, she awoke and saw defendant walking out of her room.

When Jane Doe was eight years old, defendant also touched her during a car ride to the store. He forced her to sit on his lap and she steered the car while he touched her genitals over her clothes. She warned defendant to stop or she would tell her mother. Defendant responded that Jane Doe's mother would be angry at her. At the store, defendant bought Jane Doe candy and gave her 50 cents to be quiet. Several times on trips to the store, defendant touched Jane Doe and gave her money or candy.

Defendant also touched Jane Doe at the beach when she was between eight and 10 years old. While pretending to teach her to swim, defendant would grab her crotch over her swimsuit. While she played at the park, defendant would grab her over her clothing. He once grabbed her crotch while placing her on top of a pony. Defendant also spied on her while she was showering.

3

Twice when Jane Doe was sick, defendant rubbed Vicks VapoRub on her chest underneath her shirt. Jane Doe was afraid to tell anyone because she believed defendant might hurt her mother.

### B. Acts of Lewd and Lascivious Conduct in Perris

Jane Doe was 11 or 12 years old (between 1998 and 2000) when the family moved to Perris in Riverside County. Defendant would call Jane Doe into his room, tell her to sit next to him on his bed, and stroke her legs. He would caress her hands and try to touch her genitals over her clothing but she pushed his hand away. Defendant also attempted to grab Jane Doe's breasts, starting with her elbows. This happened "[m]ore than six, seven times."

Defendant stopped touching Jane Doe when she was 14 after a Child Protective Services (CPS) worker came to the house in June 2002 on another matter—although Jane Doe was afraid to talk to the CPS worker.[4] Jane Doe knew defendant had a gun, he had repeatedly told her that there was nothing wrong with the touching, and she thought no one would believe her.

### C. Post-Molestation Events

In late 2003, when Jane Doe was 16 and pregnant, she left home with her boyfriend. She still visited defendant but she would not leave her children alone with him. She blocked out the events from her childhood. She borrowed money from

---

[4] A CPS worker interviewed Jane Doe in June 2002, when she was 14 years old. to determine whether she suffered from any child abuse. Jane Doe denied that anyone had touched her "private parts."

4

defendant and she and her husband rented a trailer to live in from defendant but, when they could not pay, defendant asked her to leave. She did not fabricate allegations against defendant for revenge.

In 2012, when she was 25, Jane Doe began having sexual problems with her husband. She began to remember past events and was hospitalized with panic attacks. During a medical history examination taken at a mental health clinic, she revealed her past abuse. Three months after the panic attack and hospital visit, she first told a family member about the molestations.

In November 2012, Investigator Glenn Johnson of the Riverside County Sheriff's Department interviewed Jane Doe who, was crying, upset, and "in shambles." Jane Doe recited a basic summary of what happened with defendant. She told Johnson that, after she moved to Perris, the "touching continued as it had in Anaheim." Johnson interviewed defendant who finally admitted touching Jane Doe on her chest and genitals between three and six times and wrote a letter of apology to her.

III

*MIRANDA* VIOLATION

Defendant contends the trial court erred by denying his motion to suppress his statements and the letter he wrote during the course of the custodial interview because the questioning continued after he purportedly invoked his right to counsel.

A. *The Interrogation*

During the interrogation, Investigator Johnson advised defendant of his *Miranda* rights and defendant verbally confirmed he understood the rights. Subsequently,

5

defendant mentioned a lawyer three times. When defendant first used the word "lawyer," Johnson asked defendant if he wanted a lawyer and defendant did not respond directly. Instead, he denied touching Jane Doe and the interview continued. Then defendant asked Johnson how long it would take to get a lawyer. Johnson told him, "A couple days." Later, defendant made the statement, "talk to a lawyer I guess." Both times defendant continued talking to Johnson.

Defendant admitted that he touched and rubbed Jane Doe's genitals three to six times and specifically admitted the incident involving a pony in Anaheim. The three to six incidents occurred in Perris, when Jane Doe was about eight years old. Defendant also admitted to touching Jane Doe on the chest when she was in high school. He physically demonstrated how he would rub Jane Doe. Defendant said he did not touch Jane Doe more frequently because of his wife.

During the interview, defendant wrote a letter of apology to Jane Doe, stating, "'Look [Jane Doe], forgive me for touching you. I hope this helps a lot. I have nothing else to say.'" When defendant finally asked unambiguously for a lawyer, Investigator Johnson ended the interview.

B. *Relevant Law*

After *Miranda* warnings are given, the interrogation must cease if the suspect indicates he wishes to remain silent or states he wants an attorney. The state bears the burden by a preponderance of the evidence to show that a suspect's waiver was knowing, intelligent, and voluntary under the totality of the circumstances surrounding the interrogation. (*People v. Williams* (2010) 49 Cal.4th 405, 425; *People v. Cruz* (2008) 44

6

Ca1.4th 636, 668.)  After a knowing and voluntary waiver, an interrogation may continue unless the suspect clearly requests an attorney.  (*Williams,* at p. 427.)

In the absence of an unambiguous or unequivocal invocation, the interrogating officer has no obligation to end the interrogation or ask the suspect any clarifying questions.  (*Berghuis v. Thompkins* (2010) 560 U.S. 370, 381; *People v. Martinez* (2010) 47 Cal.4th 911, 948.)  However, the interrogator may try to clarify the suspect's intention.  (*People v. Williams, supra*, 49 Cal.4th at p. 428.)  Ambiguity is determined objectively; statements deemed ambiguous are those that "a reasonable officer in light of the circumstances would have understood [to signify] only that the suspect *might* be invoking" his *Miranda* rights.  (*Davis v. United States* (1994) 512 U.S. 452, 459; see *Williams,* at p. 428.)  In considering a *Miranda* violation on appeal, this court independently reviews the trial court's legal determination and defers to its factual findings if substantial evidence supports them.  (*Williams,* at p. 425.)

## C.  *The Pretrial Motion*

Defendant made a pretrial motion to exclude all statements he made to Investigator Johnson during the entire interview—and the letter he wrote—based on a purported *Miranda* violation.  The trial court—and this court— reviewed the actual DVD in its entirety, focusing on the several mentions of an attorney.  The trial court found (1) defendant was in custody; (2) defendant received a *Miranda* admonishment and he acknowledged the warning; (3) defendant understood his *Miranda* rights; (4) defendant eventually invoked his *Miranda rights*; (5) but, until defendant unequivocally invoked his

7

rights, there was ambiguity about whether defendant had invoked his *Miranda* rights and the investigator was seeking clarification.

As to the first attempted invocation, the trial court found the invocation was ambiguous because it was mostly unintelligible and, when the investigator sought clarification, defendant proceeded with the conversation voluntarily. The second invocation was unclear based on unintelligible sections and because defendant qualified his supposed invocation. When Investigator Johnson tried to clarify, defendant did not further invoke his right to counsel and did not remain silent. Therefore, the trial court denied the motion to exclude defendant's statements and the written letter.

Based on our review of the DVD and the transcript, we agree defendant did not invoke his *Miranda* rights when defendant initially mentioned a lawyer to Investigator Johnson. His statement was fragmented and confusing, and, when Johnson tried to clarify his meaning, defendant continued talking to Johnson. A suspect must unambiguously request counsel and "he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." (*Davis v. United States, supra*, 512 U.S. at pp. 459, 461; *People v. Gonzalez* (2005) 34 Cal.4th 1111, 1127.) "Under the *Davis* [*v. United States*] standard, it is not enough that a suspect makes a reference to an attorney 'that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel.'" (*People v. Nelson* (2012) 53 Ca1.4th 367, 376, quoting *Davis v. United States, supra*, 512 U.S. at p. 459.)

8

Defendant's second mention of an attorney was also unintelligible, confusing and equivocal. After asking how long it would take to speak to a lawyer, defendant talked for a long time and made a phone call to his sister before making an incomprehensible statement: "No, (unintelligible)–you–(unintelligible) talk to a lawyer I guess." While defendant may have meant this statement as a request for counsel, it cannot be said that this was the only reasonable understanding that an officer could have had. (*People v. Bacon* (2010) 50 Cal.4th 1082, 1105-1007 [use of qualifying term "probably" rendered statement ambiguous]; see *Davis v. United States, supra*, 512 U.S. at p. 459.) Defendant's statement was not an unambiguous invocation of his rights. When Investigator Johnson asked a clarifying question to determine whether defendant wanted to stop the interview, defendant responded, "Like I said, I don't and–they're gonna (unintelligible) right away. I love my wife and kids." Defendant did not clearly ask for a lawyer.

Defendant argues that the Ninth Circuit's decision in *Alvarez v. Gomez* (9th Cir. 1999) 185 F.3d 995 is instructive because the defendant in that case requested to speak to an attorney three times. This court is not bound by holdings of lower federal courts. (See *People v. Romero* (2006) 140 Cal.App.4th 15, 19; *People v. Burnett* (2003) 110 Cal.App.4th 868, 882.) Furthermore, in *Alvarez*, the defendant requested "an attorney as soon as he was asked whether he wished to waive his right to remain silent and submit to questioning." (*People v. Williams, supra*, 49 Cal.4th at p. 430.) Not so here.

The California Supreme Court distinguished the *Alvarez* holding in situations where defendant has first waived his *Miranda* rights and then fails to assert his rights

9

unambiguously in the subsequent interrogation. (*People v. Williams, supra*, 49 Cal.4th at pp. 430-432.) The *Alvarez* "court explained that it was evident the police were not merely seeking clarification but sought to undermine the defendant's intent to assert his rights." (*Id.* at p. 430.) Thus, defendant's reliance on *Alvarez* is misplaced. Here, after defendant was fully advised and waived his *Miranda* rights, he made ambiguous and unclear references to an attorney. The officer properly followed up with clarifying questions, and defendant's answers indicated he was not invoking his right to counsel.

Finally, defendant's argument that the investigator misled him by stating that it would take "a couple days" to talk to a lawyer is meritless because it was a truthful answer. At trial, Johnson explained defendant would be appointed an attorney in a couple of days when he was arraigned. Johnson did not mislead defendant. (*People v. Smith* (2007) 40 Cal.4th 483, 503; *People v. Enraca* (2012) 53 Cal.4th 735, 756.)

In summary, because defendant's statements were unclear and ambiguous, it was reasonable for Investigator Johnson to attempt to clarify defendant's intention and to continue the interview. There was no Fifth Amendment violation, and the trial court properly admitted defendant's statements and the letter he wrote during the interview.

IV

COUNTS 5 AND 6

Jane Doe testified that defendant had touched her in Perris more than six or seven times and, on cross-examination, she described four incidents in detail. Defendant admitted touching Jane as many as six times when they lived in Perris although he misstated her age as being eight years old. Defendant argues there is insufficient

10

evidence to support convictions on counts 5 and 6. Based on Jane Doe's testimony at trial, and defendant's corroborating admission, substantial evidence supported a conviction for six separate incidents of inappropriate touching.

On cross-examination, Jane Doe testified one incident occurred when defendant touched her leg and genitals while they sat together. The second incident involved defendant touching her when she and defendant were on the way to the store. A third time, defendant again sat next to Jane Doe and touched her leg and genitals. During a fourth incident, defendant touched her in the backyard. Jane Doe could not recall "exactly where or when" about further incidents but she testified generally that defendant touched her six times in Perris and defendant testified to the same facts.

We apply a deferential standard of review, determining "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319; *People v. Johnson* (1980) 26 Cal.3d 557, 575-578.) If the evidence presented below is subject to differing inferences, the reviewing court must assume that the trier of fact resolved all conflicting inferences in favor of the prosecution. (*Jackson,* at p. 326.) A reviewing court does not make its own subjective determination of guilt. (*Id.* at p. 321, fn. 13.)

In *People v. Jones* (1990) 51 Cal.3d 294, 313 , the California Supreme Court held that generic testimony is sufficiently substantial from an evidentiary standpoint to support a conviction when the defendant is accused of repeatedly engaging in nonspecific lewd and lascivious conduct which cannot be clearly differentiated. (*Id.* at p. 316, citing

11

*People v. Moore* (1989) 211 Cal.App.3d 1400.) The victim must be able to describe the acts committed with sufficient specificity and to differentiate between the various types of proscribed conduct, such as lewd conduct, intercourse, oral copulation or sodomy. The victim must also be able to describe the number of acts committed—such as "once a week" or "whenever we drove to the store"— as well as a general time period based on age or location, such as 12 or 13 years old and living in Perris. Additional details are useful but not essential because of the difficulties inherent in proving child molestation cases involving young victims and multiple repetitive acts. (*Jones,* at p. 305.)

Collectively, the evidence here sufficiently establishes that defendant committed the crimes charged in counts 5 and 6. A defendant may be constitutionally convicted of child molestation based on "generic evidence describing (1) the kind of acts committed, (2) the number of acts committed with sufficient certainty to support the alleged counts, and (3) the general time period in which the acts occurred." (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 557.) In "child molestation cases, as long as the victim specifies the type of conduct involved, its frequency, and that the conduct occurred during the limitation period, nothing more is required to establish the substantiality of the victim's testimony." (*People v. Matute* (2002) 103 Cal.App.4th 1437, 1446.)

In this case, there was evidence from both the victim and defendant that he touched her lewdly at least six times (or more) in Perris when she was younger than 14 years old. The number of times defendant admitted to touching Jane Doe, corroborated her testimony that he touched her inappropriately six to seven times in Perris. Viewing the entire record in the light most favorable to the prosecution, and drawing all

12

reasonable inferences in support of the conviction, substantial evidence supports the six convictions. For that reason, we do not need to consider defendant's additional arguments about section 654. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

V

JURY INSTRUCTIONS

Whether a jury instruction correctly states the law is reviewed under the de novo standard of review. (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.) Defendant must demonstrate it is reasonably likely that the jury understood the instruction in a manner that violated his constitutional rights, and that it is reasonably probable a more favorable result would have been obtained at trial absent the error. (*People v. Santana* (2013) 56 Cal.4th 999, 1012; *People v. Smithey* (1999) 20 Cal.4th 936, 963.) Furthermore, "'[i]nstructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such an interpretation.' [Citation.]" (*Ramos,* at p. 1088.)

Defendant asserts the jury instructions were misleading and ambiguous and allowed the jury to convict him of crimes that occurred in Orange County, which were only admitted under Evidence Code section 1108. The jury instructions as a whole, however, clarified that the crimes defendant was charged with occurred in Riverside County. The Orange County evidence was only presented to help the jury determine if the crimes in Riverside County actually occurred.

The Anaheim incidents were used as evidence of prior sexual offenses under Evidence Code section 1108. The amended information charged defendant with six

13

counts of violating section 288, subdivision (a), "in the County of Riverside," from the years 1998 to 2002. The court agreed the Orange County offenses were to be considered under Evidence Code section 1108.

Defense counsel requested a special instruction that read: "Except as 1108 evidence, you may not use any of the incidents that occurred in Orange County as incidents occurring in Riverside County for convictions in Counts 1 through 6. The court denied the request, finding the information requested in the special instruction was covered by the other instructions, specifically CALCRIM Nos. 1191 [Uncharged Sex Acts of Defendant] and 303 [Limited Purpose Evidence].

Ultimately, the jury received a unanimity instruction (CALCRM No. 3501) and other pertinent instructions:

"It is alleged that the crimes charged in Riverside County occurred on or about September 5, 1995, through September 4, 2001. The People are not required to prove that the crime took place exactly on that day, but only that it happened reasonably close to that day." (CALCRIM No. 207 [On or About Date].)

"During the trial, certain evidence regarding allegations in Orange County [was] admitted for a limited purpose. You may consider that evidence only for that purpose and for no other." (CALCRIM No. 303) [Limited Purpose Evidence]

"The People presented evidence that the defendant committed the crimes of 288(a) and 647.6 that were not charged in this case from Orange County. These crimes are defined for you in these instructions. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact

14

committed the uncharged offenses. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

"If the People have not met this burden of proof, you must disregard this evidence entirely.

"If you decide that the defendant committed the uncharged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit the [section] 288(a), lewd or lascivious acts on a child under 14, as charged here. If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of counts 1-6, lewd or lascivious acts on a child under 14. The People must still prove each charge beyond a reasonable doubt.

"Do not consider this evidence for any other purpose." (CALCRIM No. 1191 [Uncharged Sex Acts of Defendant].)"

During closing argument, the prosecutor repeatedly reminded the jury that the six charged offenses occurred in Perris, and that the Orange County acts could only be used to determine whether the acts in Riverside County occurred, but could not satisfy the elements needed for a guilty verdict. Defense counsel also stressed that the six charged offenses must have occurred in Riverside County.

15

Defendant contends the jury instructions incorrectly allowed the jury to find that the alleged crimes could have occurred in 1995 and, therefore, the jury could have found defendant guilty based on crimes that occurred in Orange County and admitted as prior crime evidence. However, the jury instructions were not ambiguous and correctly charged the jury with the task of determining whether defendant committed six acts of lewd and lascivious conduct in Riverside County.

The evidence presented at trial was inconsistent as to when Jane Doe's family moved to Perris. Jane Doe said they moved when she was 11 or 12 years old, either 1998, 1999, or 2000. Defendant admitted touching Jane Doe in Perris when he thought she was eight years old, which would have been in 1995 or 1996. Therefore, the trial court properly instructed the jury that the incidents must have occurred sometime between September 1995 and September 2001, when Jane Doe turned 14, based on the state of the evidence and the statements made by both Jane Doe and defendant.

CALCRIM No. 207 explicitly stated that that the crimes were "charged in Riverside County," making it clear to the jury that the inappropriate touching had to have happened in Riverside County. Additionally, the remaining instructions clarified that all charged crimes must have occurred in Riverside County and that the evidence of crimes in Orange County was only presented for a limited purpose.

Furthermore, counsels' arguments must be considered in assessing whether any ambiguity caused the jury to misunderstand the instructions. (*People v. Young* (2005) 34 Cal.4th 1149, 1202.) The prosecutor reiterated to the jury that the charged offenses

occurred in Perris and defendant could not be convicted for events that occurred in Anaheim.

In sum, the jury instructions as a whole were not ambiguous, and there is no reasonable likelihood that the jury understood the instructions in a manner that violated defendant's constitutional rights. (*People v. Ayala* (2000) 24 Cal.4th 243, 289.) The instructions and counsels' arguments made it clear that the jury could only convict defendant based on conduct that occurred in Riverside County.

## VI

## DISPOSITION

There was no *Miranda* or instructional error. Counts 5 and 6 are supported by sufficient evidence. We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON _____

J.

We concur:

KING _____

Acting P. J.

MILLER _____

J.

17