[No. B030730. Second Dist., Div. Six. Feb. 17, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
HAROLD OBREMSKI, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for partial publication. The portions of this opinion to be published follow.

**COUNSEL**

Donald J. Calabria for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Linda C. Johnson and Robert M. Snider, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STONE (S. J.), P. J.**—Appellant Harold Obremski was convicted by a jury of 25 sex crimes out of 26 charged offenses.[1] His convictions include seven violations of Penal Code section 261.5 (unlawful sexual intercourse with female under age 18—counts 14, 18, 21, 23 through 26); thirteen violations of Penal Code section 288, subdivision (a) (lewd or lascivious acts with child under age 14—counts 1 through 13); one violation of Penal Code section 288a, subdivision (b)(1) (oral copulation with person under age 18—count 20); two violations of section 288a, subdivision (b)(2) (oral copulation by person over age 21 with person under age 16—counts 15 & 16); one violation of Penal Code section 286, subdivision (b)(1) (sodomy with person under age 18—count 19); and one violation of section 286, subdivision (b)(2) (sodomy by person over age 21 with person under age 16—count 17). The jury also found true the 25 charged special trust allegations pursuant to Penal Code section 1203.066, subdivision (a)(9).

Appellant was sentenced to a total prison term of 35 years and ordered to pay a fine of $10,000 to the state restitution fund.

He contends that the prosecution failed to allege and prove the exact date of any of the charged offenses, which violated his due process rights.

. . . . . . . . . . . . . . . . . . . . . .*

We affirm the judgment.

*Facts*

Viewing the evidence in the light most favorable to respondent (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]), all of appellant's offenses were committed against D., his

---

[1] Prior to the end of trial, the People moved to dismiss count 22, the only misdemeanor count (former Pen. Code, § 647a, now § 647.6 [annoying or molesting a child under age 18]).

*See footnote, *ante*, page 1346.

stepdaughter, between the years 1982 and 1986 when appellant, D. and D.'s mother, C., lived together as a family.[3] During this period, appellant and D. had sexual intercourse at least once a week and as often as three times a day. Appellant did not have a sexual relationship with C. during most of the time the offenses were committed. When the offenses began in 1982, D. was 12 years old.

D. felt obliged to have sex with appellant because in return appellant would be lenient in disciplining her, would give D. money to buy clothes, and would promise to buy her a car. When appellant became angry whenever D. refused to have sex with him, D. would "have to go make up to him 'cause I never really had anybody else . . . I had to make up so that I . . . knew someone cared . . . ."

Between 1982 and 1983 appellant and D. had sexual intercourse 15 or 20 times each month in either appellant's and C.'s bedroom or the living room, either after C. went to work or before she returned from work. Sometimes they had sex after C. went to bed. Rarely did sex occur in D.'s bedroom "[b]ecause you couldn't hear the front door very well from my room or if my mom was sleeping, my [D.'s] room was close to their [appellant's and C.'s] room." To avoid C. walking in on appellant and D. when C. returned home from work, appellant or D. would lock and chain the front door.

In 1983, D. orally copulated appellant, either before intercourse or by itself. In 1983 and 1984, oral copulation and intercourse occurred every month. On one occasion, C. walked into her and appellant's bedroom to find D. orally copulating appellant; however, no one in the household ever spoke about the incident.

In 1985, appellant sodomized D. 20 to 25 times. D. argued with appellant about it because it hurt her. To reduce the pain, she would drink beer, scotch or vodka with appellant's approval. Appellant purchased a vibrator which was used during anal sex. Vaginal intercourse and oral copulation also occurred as often in 1985 as these activities occurred in the previous years.

In 1985, D. developed a vaginal discharge. Appellant took her to Doctor Toomer, a gynecologist. After examining D. in appellant's presence, Doctor Toomer concluded that she had developed a bacterial vaginal infection transmitted through sex. Appellant had instructed D. to tell the doctor that she had not had sex before. Later, when the vaginal discharge persisted,

---

[3] Appellant has two daughters, J. and K., who did not live with the family. K.'s name actually begins with a "C"; however, to avoid confusion, she is referred to as "K."

Doctor Toomer insisted on examining D. alone and advised appellant that her problem would not clear up if she continued to be sexually active. Appellant did not take D. back to Doctor Toomer again.

During 1985 and 1986, appellant took D. on three trips to Bishop, California, without C. From March 29, to April 2, 1985, appellant and D. slept in one bed in a room at the Townhouse Motel and had intercourse several times. This occurred a second time at the same motel on November 8 to 9. On the third trip, from March 25 to 27, 1986, appellant and D. shared a room with two double beds with appellant's daughters, J. and K. After drinking some wine coolers, D. had intercourse with appellant.

In 1986, appellant sodomized D. about 15 times and also continued to engage in intercourse and oral copulation with her.

Early in 1986, D.'s friend, Rob Lambert, suspected that "something [sexual] was going on" between her and appellant. D., in an emotional state, admitted to Rob, " 'Yes, something's going on,' " and said she "owed" it to appellant because he bought her things. However, D. told Rob if anyone found out she would kill herself. Nevertheless, Rob informed school officials about D.'s admission several months later. D. was placed in a foster home. Several days before leaving for the foster home, D. and appellant again had intercourse.

Further evidence revealed that appellant was jealous of every boy D. dated and tape-recorded her telephone calls, appellant took 30 to 40 pictures of D. while she was naked sometime during the period between her eighth and eleventh grade years, and appellant's daughter J. suspected before the truth was known that appellant and D. were sexually involved.

*Defense*

Appellant's defense was (1) he was physically incapable of having sex and (2) D.'s testimony was not credible. Appellant's physician testified that appellant was sexually dysfunctional from June 1984 to at least June 1985 as the result of a back injury he sustained in an automobile accident. Appellant further was treated for sexual dysfunction and depression by a psychologist who testified that appellant's condition would not have enabled him to have sex with D.

C. testified that her sex life with appellant ended after he sustained the back injury in 1984 and that advice on ways C. could help appellant maintain an erection proved unsuccessful. Although C. was aware of D.'s vaginal infection, C. never saw or heard anything to cause her to believe appellant

and D. were engaging in sexual activity. C. never saw D. orally copulating appellant, nor did D. ever talk to C. about any sexual activity with appellant. C. also testified that appellant was a concerned father whose treatment of D. was consistent with the way he treated his daughters, D. did not have a wardrobe substantially different from those of her friends, the tapes that appellant made of D.'s telephone calls assisted C. in disciplining D. and D. would often lie to gain sympathy from people.

Other testimony in favor of appellant was that appellant never attempted to molest J. and K.; J. did not see or hear anything on the night J. and K. shared a room with appellant and D. which would have led her to believe that appellant and D. engaged in sexual intercourse that night; appellant's former brother-in-law and another friend never saw anything to indicate appellant was having a sexual relationship with D.; and Rob Lambert told a private investigator that D. was "very messed up," did not often know right from wrong, and did not often tell the truth.

DISCUSSION

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .*

■ Appellant relies on *People* v. *Van Hoek* (1988) 200 Cal.App.3d 811 [246 Cal.Rptr. 352], in asserting that all of his convictions should be reversed because the prosecution failed to allege exactly the date, place and time of each charged offense, which precluded appellant from presenting an alibi defense and thereby violated his right to due process. Appellant asks how he reasonably can be expected to defend against the evidence of hundreds of sexual acts with D. when he is not sufficiently informed of any particular offense.[4] Respondent counters that *Van Hoek* was incorrectly decided and, anyway, the jury in this case was instructed pursuant to CALJIC No. 17.01 (1979 rev.), the unanimity instruction.

We hold that appellant is estopped to raise this issue on appeal. The record reveals no history of appellant's asserted interest in presenting an

---

* See footnote, *ante,* page 1346.

[4] The information alleged that every count was committed in Ventura County and that count 1 was committed on or about 1982, count 2 on or about January 1983, count 3 on or about February 1983, count 4 on or about March 1983, count 5 on or about April 1983, count 6 on or about May 1983, count 7 on or about June 1983, count 8 on or about July 1983, count 9 on or about August 1983, count 10 on or about September 1983, count 11 on or about October 1983, count 12 on or about November 1983, count 13 on or about December 1983, count 14 on or about 1984, count 15 on or about 1984, count 16 on or about 1985, count 17 on or about 1985, count 18 on or about 1985, count 19 on or about 1986, count 20 on or about March 1986, count 21 on or about 1986, count 23 on or about March 1985, count 24 on or about November 1985, count 25 on or about February 1986, and count 26 on or about March 1986.

alibi defense. Thus, to claim at this late date that the charges against him were not specific enough to enable him to defend the case is unfair to the People and the trial court and constitutes an attempt to disrupt the efficient administration of justice.

■■■ Even if appellant is not estopped from raising this argument on appeal, we decline to follow *Van Hoek*.

In *Van Hoek,* the defendant was convicted of seven counts of lewd and lascivious conduct toward a child and one count of unlawful sexual intercourse. Count 1 was alleged as occurring on or about January 1983, count 2 was alleged as occurring on or about April 1983 and counts 3, 4, 5, 6, and 7 were alleged as occurring on or about 1985, 1984, 1982, 1981 and 1980, respectively. The victim was appellant's minor daughter. Apart from recalling three specific occasions when defendant molested her, the victim was unable to identify any specific times and testified only to a general and prolonged pattern of sexual abuse.

The appellate court in *Van Hoek* reversed the convictions. ■■■ The court noted that " 'resident child molester' "[5] cases pose two important conflicting concerns: (1) that a child molested on a regular and frequent basis might not be able to distinguish by time and detail one specific act from another, and that rendering such testimony inadequate as a matter of law "could effectively insulate the most egregious child molesters from prosecution;" and (2) that the evidence of many unspecified crimes occurring over an extended period of time makes it impossible for the prosecution to select the specific act to prove the charge and equally impossible for the jury to unanimously agree which specific criminal act the defendant committed beyond a reasonable doubt, thereby creating a fundamental due process problem which cannot be cured by an election or a unanimity instruction. (*People* v. *Van Hoek, supra,* 200 Cal.App.3d at pp. 814-816.)

We believe that the court in *Van Hoek* wrongly chose the second consideration as the prevailing one. By holding that the prosecution's failure to charge or prove the defendant committed a particular act on a particular occasion, the court's decision, in its own words, "effectively insulate[s]" resident child molesters from prosecution in circumstances similar to our own.

The *Van Hoek* court reaches this drastic result by placing a misguided emphasis on the right of resident child molesters to rely on alibi as a

---

[5] "This term has been coined to apply to a person who either resides in the same home with the minor or has unchecked access to the child and repeatedly sexually molests the child over a prolonged period of time." (*People* v. *Van Hoek, supra,* 200 Cal.App.3d at p. 814, fn. 1.)

defense. The opinion states: "A serious problem with the vague charges and the testimony upon which they are based is that the defendant's ability to defend is severely hampered. *A 'resident child molester' would virtually be precluded from presenting an alibi defense* to the acts unless he could account for every time he was in the presence of the victim. In the instant case, defendant, because he was the victim's father and lived in the household, has no idea what specific time or specific act he has to defend against. . . . [¶] Also, the defendant is precluded from attacking the victim's testimony in any way other than a general attack." (*People* v. *Van Hoek, supra,* 200 Cal.App.3d at p. 817, italics added.)

■    Due process of law requires that an accused be fairly advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense. (*People* v. *Dunnahoo* (1984) 152 Cal.App.3d 561, 571 [199 Cal.Rptr. 796].) "Whether an accused has been adequately advised depends on the nature of the crime *and the available defenses thereto.* Following an indictment or information, a preliminary hearing, and criminal discovery, a defendant should be sufficiently advised of the charge or charges to be able to plan a defense. If a defense is to be alibi as to all or part, or misidentification, . . . a defendant can request, and force, an election at the outset of a trial or at some time prior to trial, and thereby be protected from surprise." (*Ibid.*)

■    *Van Hoek* is incorrect because it attempts to fit the crime to the defense instead of fitting the defense to the crime. In cases where the child molester lived with the victim for an extensive, uninterrupted period and therefore had continual day and night access to the vulnerable child, neither alibi or wrongful identification is likely to be a reasonable defense. (*People* v. *Dunnahoo, supra,* 152 Cal.App.3d at p. 572.) If the victim of a resident molester is able to testify only to a general sexual interaction with the molester, the molester himself is likely to be similarly handicapped in eliciting from his memory specific details concerning the date, time and place of his activities during the years of his residence with the victim. Forcing the prosecution to an election in this factual situation achieves the anomalous result of subjecting to prosecution only those defendants who select victims with better memories or who are one act offenders. (*Id.,* at p. 573.)

In resident child molester cases, the true issue is credibility. (*People* v. *Dunnahoo, supra,* 152 Cal.App.3d at p. 572.) "[S]ince the prosecution always has the burden of proving guilt beyond a reasonable doubt, an accused can stand mute and attack the credibility of complaining witnesses. Where the accused is a stranger to the victim and/or the household and allegedly committed a single unlawful act, an alibi or identity defense might be

crucial." (*Ibid.*) Indeed, in the present case, a large part of the testimony by the defense went to discrediting the victim.

Where alibi is not a defense, the prosecution need only prove the act was committed before the filing of the information and within the period of the statute of limitations. (*People* v. *Osuna* (1984) 161 Cal.App.3d 429, 433 [207 Cal.Rptr. 641].) This is so because the precise time of a crime need not be declared in the accusatory pleading except where time is a material ingredient of the offense. (Pen. Code, § 955; *People* v. *Wrigley* (1968) 69 Cal.2d 149, 155 [70 Cal.Rptr. 116, 443 P.2d 580].) Time is essential if the defense is alibi. (*People* v. *Amy* (1950) 100 Cal.App.2d 126, 127-128 [223 P.2d 69].)

Since the exact times of the offenses are not material in the case before us, in that appellant did not attempt to prove an alibi and had uninterrupted access to the victim, the imprecise charges did not mislead him and violate his right to due process.

. . . . . . . . . . . . . . . . . . . .*

The judgment is affirmed.

Gilbert, J., and Abbe, J., concurred.

---

*See footnote, *ante*, page 1346.