Filed 9/5/13  P. v. Shiringoharian CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B239721 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. NA085709) |
| AMIRHOSSEIN SHIRINGOHARIAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. James B. Pierce, Judge.  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Stephanie A. Miyoshi and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Amirhossein Shiringoharian (defendant) was convicted on counts for grand theft automobile, receiving a stolen automobile, receiving stolen property, grand theft of credit cards, theft of identifying information to obtain credit, goods or services (identify theft), and burglary.  On appeal, he contends that the convictions on counts 1, 2, 3, 4, 5, 10, 12, 19, 23, 24, 25, 26, 27, 28, 29 and 34 were based on insufficient evidence.  Upon review, we find no error and affirm the judgment.

**FACTS**

**The information**

The District Attorney of Los Angeles County filed an amended information against defendant on January 16, 2012.  Count 1 alleged that defendant committed grand theft auto of a gray 2006 BMW (Pen. Code, § 666.5).[1]  The gray 2006 BMW belonged to Alison Austin (Austin).  In count 2, defendant was charged with receiving Austin's BMW after it had been stolen (§ 666.5).[2]

Count 3 charged defendant with receiving stolen property in violation of section 496, subdivision (a).  That property was a desktop computer belonging to Austin, checks belonging to Cheryl Paller (Paller), Triple A cards belonging to Jerry Kay (Kay), a driver's license belonging to Erik Olsen (Olsen), a driver's license and social security

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     Section 666.5, subdivision (a) increases the base term for a second felony theft of automobile.  (*People v. Demara* (1995) 41 Cal.App.4th 448, 452.)  The statute provides in part: "Every person who, having been previously convicted of a felony violation of Section 10851 of the Vehicle Code, or felony grand theft involving an automobile in violation of subdivision (d) of Section 487, . . . or a felony violation of Section 496d regardless of whether or not the person actually served a prior prison term for those offenses, is subsequently convicted of any of these offenses shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years, or a fine of ten thousand dollars ($10,000), or both the fine and the imprisonment." (§ 666.5, subd. (a).)  Though counts 1 and 2 charged defendant with violating section 666.5, this was presumably shorthand for saying the offenses were second violations of section 487, subdivision (d) [grand theft automobile] and section 496d, subdivision (a) [receiving a stolen automobile].

2

card belonging to Christopher Moghaddam (Moghaddam), and a laptop computer belonging to Linda Shelvin (Shelvin).

Counts 4, 5, 9, 10, 17, 20, 26, 29, 31, and 32, charged defendant with grand theft of credit cards in violation of section 484e, subdivision (d). As is relevant to this appeal, and as alleged and/or argued by the prosecutor, count 4 pertained to an Alaska Airlines Visa card belonging to Paller and stolen from her vehicle on November 2, 2009; count 5 pertained to two American Express cards and two Bank of America Visa cards belonging to Paller and stolen from her vehicle on November 2, 2009; count 10 pertained to a First Horizon Visa card belonging to Amanda Vaal (Vaal) and stolen from her vehicle on November 17 or 18, 2009; count 26 pertained to a Wells Fargo Visa card belonging to Olsen and stolen from his vehicle on November 24, 2009; and count 29 pertained to two Bank of America Visa cards belonging to Jonathan Kang (Kang) and stolen from his vehicle on November 24, 2009.[3]

Defendant was charged in counts 6, 11, 12, 13, 14, 15, 18, 21, 22, 24, 33, and 35, with identity theft in violation of section 530.5, subdivision (a). As is relevant to this appeal, and as alleged and/or argued by the prosecutor, count 12 pertained to defendant's fraudulent use of an American Express card belonging to Vaal to make a purchase at 6:04 p.m. at a Whole Foods market on November 21, 2009, in the amount of $14.16. In addition, count 24 pertained to defendant's attempted fraudulent use of a Citibank Visa card belonging to Orly Beardsley (Beardsley) on November 22, 2009, at a Whole Foods market, a FedEx Kinkos and DVD Play.[4]

---

[3] Counts 9, 17, 20, 31 and 32, respectively, pertained to cards belonging to Vaal, Lori Noravian (Noravian), Bobby Davis (Davis), Chesare Bono (Bono) and Casey Binafard (Binafard) and stolen from their vehicles. Defendant was convicted on all but count 31. He does not challenge the sufficiency of the evidence to support these convictions.

[4] Counts 6, 11, 13, 14, 15, 18, 21, 22, 33, and 35, respectively, pertained to defendant's fraudulent use of cards belonging to Paller, Vaal, Noravian, Davis, Binafard and Daniel Field (Field). Defendant was convicted on all of these counts. These convictions are not challenged.

3

In counts 7, 8, 16, 19, 23, 25, 28, 30, and 34, defendant was charged with second degree burglary of various vehicles in violation of section 459. As is relevant to this appeal, and as alleged and/or argued by the prosecutor, count 19 pertained to the November 6, 2009, burglary of a 2006 Dodge Magnum belonging to Davis; count 23 pertained to the November 22, 2009, burglary of a 2006 BMW belonging to Beardsley; count 25 pertained to the November 3, 2009, burglary of a 2005 Saab belonging to Olsen; and count 28 pertained to the November 12, 2009, burglary of a 2006 Lexus belonging to Kang.[5] With respect to count 27, defendant was charged with first degree residential burglary because Kang's 2006 Lexus was in his apartment building's garage.

**The People's Case**

*The crimes*[6]

On November 4, 2009, Austin parked her BMW at the parking lot connected to the UCLA Medical Center in Westwood. It contained a desktop computer and a valet key. Subsequently, the car was stolen. About a week later, Kang's vehicle was burglarized while it was parked in the ground floor parking garage for his apartment building on Midvale Avenue in Los Angeles, which is near the UCLA Medical Center. Cash, two Bank of America Visa cards, an American Express card and a driver's license were stolen from the wallet that Kang kept in the center console of his vehicle.

In October and November of 2009, someone burglarized cars located in parking structures near the UCLA Medical Center, L.A. Fitness and a gym called "Equinox" in an area of Los Angeles known as Westwood.[7] Specifically, the burglar stole Kay's Triple A

---

[5]     Counts 7, 8, 16, 30 and 34, respectively, pertained to the burglary of vehicles belonging to Kay, Vaal, Noravian, Bono and Shelvin. Defendant was not convicted on counts 7 and 30. He was convicted on counts 8, 16 and 34. He does not challenge those convictions.

[6]     Defendant was accused of stealing a host of items. For the sake of brevity and clarity, our statement of facts does not list every item stolen.

[7]     Beardsley testified that Equinox and L.A. Fitness are "right across the street" from each other.

4

cards, a Blockbuster card, and a country club card; an alligator wallet from Paller containing two checks, an Alaska Airlines Visa card, two Bank of America Visa cards and two American Express cards; Olsen's Wells Fargo Visa card, his California driver's license and an old Texas driver's license; Bono's Wachovia Visa card; Vaal's First Horizon Health Savings Visa card and American Express card; Beardsley's Citibank Visa card; Shelvin's laptop computer, which was missing the letter "F"; Noravian's debit card and Citibank Visa card; Moghaddam's driver's license and social security card; Davis's driver's license, social security card, and Visa cards; and Binafard's Chase Mastercard.

Many of the stolen credit cards were used. For example, defendant used Davis's Arrowhead Visa card to charge $132.75 at Westland Cleaners. Vaal's American Express card was used to make a fraudulent purchase at Whole Foods on November 21, 2009, in the amount of $14.16. On November 22, 2009, Beardsley's Citibank Visa card was used at Whole Foods, FedEx Kinkos and DVD Play. Defendant used Noravian's Citibank Visa card to purchase items, including a french roll, at Whole Foods on November 24, 2009, for a charge of $162.85.

Field parked his car in the parking lot for Equinox on January 3, 2010. His Visa card was stolen out of his car.

*The traffic stop; the search*

On the night of November 24, 2009, Long Beach police officers Javier Sepulveda and Valente Marshall conducted a traffic stop of a blue Mazda. Defendant was the passenger. He identified himself to Officer Sepulveda as Cohen Bryan and gave a date of birth. When Officer Sepulveda determined that no such person existed and confronted defendant, defendant said his name was "Amirhossein Shirgon." Officer Sepulveda checked that name, too. He found "Amirhossein Shiringoharian" in the computer and asked if that was defendant's true name. He said yes. The blue Mazda was not registered to either defendant or the driver. Officer Marshall searched the blue Mazda and found eight credit cards in a metal credit card holder underneath defendant's seat. The cards included an Alaska Airlines Visa card and American Express card in the name of Paller, a Chase debit card and a Citibank Rewards card in the name of Noravian, a Chase debit

card in the name of Binafard, an American Express card in the name of Vaal, and a Citibank Visa card in the name of Beardsley. Kay's Triple A cards, Blockbuster card and a country club card were found in the glove compartment.

Officer Aldo Decaravalho and Officer Christopher Ignacio searched a residence (apartment 301) located two blocks from where the blue Mazda was stopped. From a shelf in the kitchen, Officer Decaravalho recovered mail and paperwork belonging to defendant,[8] and also a notebook. Some of the paperwork had defendant's photograph on it. The notebook contained what Officer Decaravalho believed were social security, vehicle identification and license plate numbers. Also in apartment 301, the officers recovered identity profiles for Thomas and Patricia B. that contained their addresses, dates of birth, social security numbers and bank account information; an identity profile for Jose L.; a Capital One bank application for Nerma C.; and a checkbook belonging to Timothy M.

Officer Decaravalho found a french roll in a package dated November 24, 2009.[9] In a closet adjacent to the kitchen, he found Paller's stolen wallet. It contained Texas and California driver's licenses belonging to Olsen. It also contained two checks belonging to Paller, her insurance cards and her California Real Estate identification card.

The next day, Detective Anthony Anast went to apartment 301. On the sofa, he found a laptop computer that was missing the "F" key, and a desktop computer. The laptop computer belonged to Shelvin, and the desktop belonged to Austin. Detective Anast found a dark brown Gap jacket on the sofa. When he lifted the jacket up, a vehicle remote fell out of the pocket. He went outside and pressed the remote. An alarm was activated in Austin's BMW, which was parked in an adjacent public parking lot. The vehicle was registered to Austin's father, and had reportedly been stolen out of the UCLA

---

[8]    Officer Decaravalho testified that he did not think that the mail was addressed to apartment 301. But defense counsel said, "I'll stipulate that [defendant] had paperwork, that some of the paperwork . . . had that address on the paperwork."

[9]    Officer Decaravalho called it a baguette.

Medical Center parking lot in Westwood. Someone had taken the license plates from another vehicle and placed them on Austin's BMW. Its actual license plates were in the trunk. In the center console, Detective Anast found credit cards in a blue suede holder. The credit cards belonged to Davis, Vaal, Olsen and Kang.

Continuing his search of Austin's BMW, Detective Anast looked in the trunk. He found doctor scrubs, shoes, pants and a shirt. An identification card in the name of Brian W. was attached to the doctor scrubs. Next, Detective Anast found a pair of tan shorts that contained two American Express cards and two Bank of America Visa cards that belonged to Paller, a Provident Bank Visa debit card that belonged to Davis, a Capital One Mastercard that belonged to Angela C., and a Wells Fargo Visa debit card that belonged to Olsen. Inside the pocket of a pair of blue jeans, Detective Anast found a Bank of America Visa card in Kang's name and a California driver's license and social security card in Maghaddam's name. In addition, Detective Anast found a white windbreaker jacket with green stripes on the sleeves and a yellow shirt; some remote garage door openers and a vehicle remote that did not belong to Austin; and a license plate assigned to the blue Mazda.

Defendant's fingerprint was found on a CD case inside the pocket of the driver's door of Austin's BMW.

*Video footage from the garage; interpretation of the footage*

The video footage and still images from the parking structure attached to L.A. Fitness showed the following.[10]

Defendant drove a gray BMW into the parking structure on November 17, 2009. He parked. He walked around in blue or purple medical scrubs. A few minutes later, he

---

[10] Detective Anast was asked to describe the parking structure. He stated: "The L.A. Fitness . . . would be on the ground floor at the corner of Wilshire Boulevard and [Gayley] Avenue. Attached to the L.A. Fitness is a sky rise medical building as well. And to the backside of both the L.A. Fitness and the medical building, which are on Wilshire, is a four story parking structure with the top [floor] being [uncovered], and . . . the three lower levels being covered."

entered a stairwell in the parking structure while wearing a white shirt with green sleeves. After about 20 minutes, he changed clothes again. He walked between the rows of cars and occasionally lifted his arm above his head. All the while, he turned his head and looked from side to side. Eventually, he changed into green colored clothing. He moved the gray BMW. He changed back into the blue or purple medical scrubs he had been wearing before. In total, he spent over three hours in the parking structure.

On November 18, 2009, defendant returned to the parking structure in the same gray BMW. Once again, he walked around in the blue or purple medical scrubs. He went to different levels of the parking structure. On the third level, he walked west then turned around and looked back with his right arm raised in the air. He moved the gray BMW to another parking stall. Upon exiting his vehicle, he took an elevator to the fourth level of the parking structure. He returned to the gray BMW and obtained a jacket, which he put on. Soon after, he reparked his vehicle. All told, he spent about an hour in the parking structure.

On November 24, 2009, defendant drove into the parking structure in a gray BMW and stayed for more than an hour. He loitered and walked around. He changed clothes and moved the BMW several times. At one point he was wearing a white jacket and brown shorts. Noravian parked and left her vehicle. A few minutes later, defendant parked the gray BMW next to Noravian's car and got out. He clasped his hands together and made an up and down motion near the passenger door of Noravian's car. Then he opened the door. He leaned in and began searching around inside. Then he opened the driver's side door and the trunk. He put his head inside the trunk as though looking for something. He pulled a white piece of clothing out of the trunk. Before leaving Noravian's car, he closed all the doors. Once he returned to the gray BMW, he got in and moved it to a different parking stall. He proceeded to get out, open his trunk and change his clothes. After he changed, he got back into the gray BMW and drove out of the parking structure.

On December 30, 2009, and January 4, 2010, defendant entered the parking structure on foot and walked around.

Detective Anast explained that auto burglars often use remotes to break into vehicles. He opined that that defendant gained access to Noravian's car by using a device called a slim gym, and that when defendant raised his hand, he was using a remote to unlock cars.

*Investigation into the use of the stolen credit cards*

Detective Anast contacted the issuing banks for the stolen credit cards and obtained a list of suspicious transactions. The credit cards were used at, inter alia, Ross, Target, Whole Foods and The Gap. Those stores sent Detective Anast some surveillance video which showed that various suspicious transactions were made by defendant.

*Defendant's arrest; his admission*

On January 16, 2010, defendant was arrested at a Coffee Bean in Westwood. During a search, the arresting officer found Field's credit card in the defendant's wallet. Later, Detective Anast spoke to defendant. Defendant admitted that he had used Field's credit card two or three times, and that he had just used it at the Coffee Bean.

**The conviction; the sentence**

The case went to trial. The jury found defendant guilty on all counts except for counts 7, 30, and 31.

Defendant was sentenced to a total of 21 years and 8 months in state prison. He was granted a total of 1,251 days of presentence credit.

This timely appeal followed.

**STANDARD OF REVIEW**

"In reviewing a challenge of the sufficiency of the evidence, we apply the following standard of review: '[We] consider the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. The test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt.' [Citations.] The United States Supreme Court has held: '[T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." [Citation.] Instead, the relevant question is whether after

9

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.] . . . [Citations.] The California Supreme Court has held, 'Reversal on this ground is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]."' [Citations.]" (*People v. Gaut* (2002) 95 Cal.App.4th 1425, 1430.)

## DISCUSSION

According to defendant, there is insufficient evidence connecting him to the crimes charged in counts 1, 2, 3, 4, 5, 10, 12, 19, 23, 24, 25, 26, 27, 28, 29 and 34. In particular, he contends that there is insufficient evidence that he received the items rather than someone else; that he knew that the property at issue had been stolen; that he was connected to apartment 301; that he was connected to Austin's BMW; or that he knew of the presence of the stolen property.

We disagree.

**A. The Law.**

Grand theft is committed when a person takes another person's automobile. (§ 487, subd. (d).) It is also committed when a "person who acquires or retains possession of access card account information with respect to an access card validly issued to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently." (§ 484e, subd. (d).) Every person who receives property or a vehicle knowing it is stolen is guilty of felony. (§§ 496, subd. (a), 496d, subd. (a).) If a person enters a car or apartment with the intent to commit any felony, he is guilty of burglary. (§ 459.) A jury may infer guilt of a theft-related crime when a defendant is in possession of recently stolen property, and if there are other circumstances that tend to show guilt. (*People v. Lopez* (2011) 198 Cal.App.4th 698, 709.) It is unlawful to willfully and without consent obtain personal identifying information and use it to obtain credit, goods or services. (§ 530.5, subd. (a).)

10

**B. Counts 1 and 2 (violation of section 487, subd. (d)—grand theft of Austin's BMW; violation of section 496d, subd. (a)—receiving Austin's stolen BMW).**

To begin, we reject defendant's contention that he had no connection to apartment 301. During trial, defense counsel asked Officer Decaravalho if he ever discovered who apartment 301 was rented to. The prosecutor asked to approach sidebar, and the following colloquy ensued:

"[THE PROSECUTOR]: I believe one of the ways they came to that location was through [defendant's] parole. And I . . . instructed the officers not to mention that. I made sure not to mention it in my direct examination. But I believe—

"[DEFENSE COUNSEL]: I'm not trying to open any doors that we agreed would be closed. . . . I don't want the impression . . . that [this] was his place. I think the way they came to that location was that [the driver of the blue Mazda] . . . told them [that the defendant was living in apartment 301.]

"[THE TRIAL COURT]: That's all hearsay. [¶] . . . [¶]

"[DEFENSE COUNSEL]: Right. [¶] . . . [¶] Right. That's why I was going into if—I'll stipulate that he had paperwork, that some of the paperwork had . . . that address on the paperwork. But what I'm trying to get to is who the apartment was rented to. . . . I don't want the jurors to have the impression that [this] was his permanent address, that's where he lived.

"[THE TRIAL COURT]: Well . . . , counsel, your choice is this.

"[DEFENSE COUNSEL]: Okay.

"[THE TRIAL COURT]: If you make that an issue as to who's living there and how he's living there and why they searched [apartment 301], then they're going to be able to bring into—

"[DEFENSE COUNSEL]: Okay then.

"[THE TRIAL COURT]: All authorities that showed that he's living there, including the parole—

"[DEFENSE COUNSEL]: Parole agent.

11

"[THE TRIAL COURT]: So if I was you, if you're satisfied that you can demonstrate to this jury that he wasn't living there, then go ahead. But they are going to learn . . . that [the police] had information through the parole department that [defendant] was living [in apartment 301]. So because that's become the issue—

"[DEFENSE COUNSEL]: All right.

"[THE TRIAL COURT]: I would be very careful in attacking that issue. [¶] . . . [¶]

"[DEFENSE COUNSEL]: I understand. I understand. Okay. I'll just move on."

Defense counsel chose to let the jury presume defendant lived in apartment 301, most likely to prevent the jury from hearing that defendant was on parole, and that apartment 301 was the address that the government had on file for him. Based on the foregoing, we easily conclude that defendant is estopped from asserting on appeal that the People failed to prove that he lived in or was connected to apartment 301. (*People v. Obremski* (1989) 207 Cal.App.3d 1346, 1351–1352 [appellant estopped from arguing on appeal that he was not sufficiently informed of the charges against him to raise an alibi defense because the "record reveal[ed] no history of appellant's asserted interest in presenting an alibi defense"].)

In any event, the evidence tied defendant to apartment 301.

Mail, paperwork and a notebook belonging to defendant were recovered from a shelf in the kitchen of apartment 301. Per defense counsel's admission or stipulation, some of the paperwork was addressed to that location. The notebook contained handwritten notes regarding social security, vehicle identification and license plate numbers. The police also recovered property that had been stolen from cars such as Austin's desktop computer, Shelvin's laptop computer, Olsen's California and Texas driver's licenses, and Paller's checks and cards. On top of that, the police discovered identity profiles for various people. The video and still images taken from the L.A. Fitness parking structure showed defendant breaking into Noravian's car with the use of a slim gym. They also showed defendant loitering in the parking structure, changing clothes and holding his hand in the air, which Detective Anast opined was defendant's

12

attempt to break into cars with a remote. The police found a french roll in a package dated November 24, 2009. Impliedly, that is the french roll defendant purchased at Whole Foods earlier that day with Noravian's credit card. These facts allow the reasonable and permissible inference that defendant was an auto burglar and apartment 301 was his base of operations.

As for defendant's connection to Austin's BMW, it was stolen from the Westwood vicinity where defendant had been focusing his criminal enterprise. A remote for the vehicle was found in apartment 301, and the vehicle was parked close by. In addition, the license plate for the blue Mazda was recovered from the trunk of Austin's BMW. Defendant's fingerprint was on a CD case in the pocket of the driver's door. Security cameras captured defendant driving into the L.A. Fitness parking structure in a gray BMW. After Austin's gray BMW was seized, defendant returned to the parking structure on foot. The inference is that defendant was on foot because he no longer had the use of Austin's BMW. Stolen credit cards were found inside the vehicle, and in the trunk. Clothing found in Austin's BMW was some of the clothing defendant was seen wearing.

A jury was entitled to find that defendant possessed Austin's BMW. That possession, together with the corroborating evidence that defendant was an auto burglar, permitted the jury to conclude that defendant committed grand theft automobile and knowingly received a stolen automobile. (*People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1574 ["Possession of recently stolen property itself raises a strong inference that the possessor knew the property was stolen; only slight corroboration is required to allow for a finding of guilt"].)

**C. Count 3 (violation of section 496, subd. (a)—receiving stolen property belonging to Austin, Paller, Kay, Olsen, Moghaddam and Shelvin).**

There was evidence that defendant possessed Austin's and Shelvin's computers, Paller's checks and Olsen's driver's licenses because they were found in apartment 301. Because there was evidence that defendant possessed Austin's BMW, as discussed in part B of the Discussion, *ante*, there was sufficient evidence that defendant possessed

13

Moghaddam's license and social security cards in the pocket of the jeans found in that vehicle.

Perhaps it is a closer call as to whether defendant possessed Kay's Triple A cards, proof of insurance cards, Blockbuster card, and a country club card. They were all found in the glove compartment of the blue Mazda during the traffic stop. Defendant, however, does not suggest that insufficiency of the evidence as to Kay's cards would require us to reverse the conviction on count 3. As a result, that issue is moot. In any event, we note that there is circumstantial evidence that defendant did possess Kay's cards. During the traffic stop, he displayed consciousness of guilt by giving the police two false names. In a metal credit card holder under the front passenger seat of the blue Mazda, the police recovered a Chase debit card and a Citibank Rewards card belonging to Noravian. There was video of defendant breaking into Noravian's car on November 24, 2009, and defendant used one of Noravian's cards to make a purchase at Whole Foods. Noravian's cards and Kay's cards were stolen out of their cars in the same vicinity within weeks. Because defendant was an auto burglar who possessed Noravian's cards, it was reasonable to infer that he possessed all stolen cards in the blue Mazda, including Kay's cards.

The evidence of possession plus the corroborating evidence that defendant was an auto burglar who used stolen credit cards to make fraudulent purchases was sufficient to support a finding that defendant received the credit cards in his possession knowing that they had been stolen.

**D. Counts 4, 5, 10, 26 and 29 (violation of section 484e, subdivision (d)—grand theft of credit cards).**

    1. <u>Count 4 (grand theft of Paller's Alaska Airlines Visa card)</u>.

The evidence established that defendant stole Paller's Alaska Airlines Visa card. Her brown alligator wallet was stolen out of her car on November 2, 2009. It contained her Alaska Airlines Visa card as well as multiple other credit cards. Officer Decaravalho found the wallet in apartment 301. As already discussed, the evidence showed that defendant used apartment 301 as the base of operations as an auto burglar. Officer

14

Marshall recovered Paller's Alaska Airlines Visa card and one of her American Express cards from a metal credit card holder under defendant's seat in the blue Mazda. Also found in that metal credit card holder were stolen cards belonging to Noravian, Binafard, Vaal and Beardsley. Defendant possessed additional stolen credit cards in Austin's BMW. Video surveillance captured defendant breaking into Noravian's vehicle on November 24, 2009. Thus, the evidence sufficiently showed possession and circumstances suggesting guilt.

The substance of defendant's attack on count 4 is contained in two sentences. He contends that "there was little evidence connecting [him] to the [blue Mazda], let alone that he acquired or retained [the Alaska Airlines Visa card] himself or that he planned to use [it]." He further contends that the People "failed to present any evidence" that he was in possession of the Alaska Airlines Visa card. The problem with these arguments is that the evidence showed his possession of the wallet in apartment 301 and the card in the blue Mazda. It is true that his possession can only be inferred. But "[i]nferences may constitute substantial evidence [if] . . . they [are] the product of logic and reason." (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.) Given all of the circumstances, it is logical to infer that defendant stole Paller's Alaska Airlines Visa card.

2. Count 5 (grand theft of Paller's Bank of America Visa Platinum card, Bank of American Platinum check card, American Express corporate card and American Express Business Platinum card).

Defendant argues that "[w]hile the prosecution presented evidence that [he] was in possession and used one of Paller's American Express cards [and] one of Paller's Visas, it failed to present any evidence regarding two of Paller's Visas [and] the additional American Express [card][.]" Essentially, defendant concedes that count 5 is supported by evidence that he stole one of Paller's American Express cards and one of her Bank of America Visa cards. He fails to explain why count 5 should be reversed in light of this concession. The issue is waived. (*Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1206, fn. 11 ["It is not our responsibility to develop an appellant's argument"].)

15

Regardless, we note that the other American Express card and other Visa card were in Paller's wallet when it was stolen. The wallet was later found in apartment 301. Then all the cards pertaining to count 5 were found in the tan shorts in Austin's BMW. As previously indicated, the evidence established that defendant used apartment 301 as his base of operations as an auto burglar, and that he stole Austin's BMW. In addition, the evidence showed that defendant kept clothes in a BMW so that he could change while loitering in parking garages. All this evidence is sufficient to establish that defendant stole the cards and then later possessed them. Based on defendant's possession of the cards and the evidence that he was an auto burglar, the jury was entitled to conclude that he stole the four cards.

3. Count 10 (grand theft of First Horizon Visa card belonging to Vaal).

According to defendant, he should not have been convicted on count 10 based on the evidence that Vaal's First Horizon Visa card was in the felt card holder inside the console of Austin's BMW. This argument misses the mark. The evidence showed that defendant was an active auto burglar. Vaal's card was stolen on November 17 or 18, 2009, from the L.A. Fitness parking lot. Surveillance video showed him prowling there on those dates. Moreover, her American Express card was stolen at the same time as her First Horizon Visa card, and surveillance video established that defendant used that American Express card at Whole Foods, Ross and The Gap store. The jury permissibly found that the person prowling the garage on the day Vaal's credit cards were stolen, who used one of those credit cards, and who possessed a second credit card in a stolen vehicle, was the person who stole the second credit card.

4. Count 26 (grand theft of a Wells Fargo Visa card belonging to Olsen).

Olsen's Wells Fargo Visa card was stolen in November 2009 from Olsen's vehicle and subsequently located in the blue suede card holder in the center console of Austin's BMW. Also in the blue suede card holder were credit cards belonging to Davis, Vaal and Kang and stolen out of vehicles in the same Westwood vicinity. Olsen's driver's licenses were located in Paller's alligator wallet in apartment 301, which was defendant's base of operations for burglarizing vehicles in the Westwood area. The circumstantial

16

evidence—the location of Olsen's credit card in the blue suede card holder, the contents of apartment 301, defendant's possession of various stolen credit cards and pieces of personal property, and his use of stolen credit cards—established defendant was an auto burglar who possessed and therefore presumably stole Olsen's credit card. The People's reliance on circumstantial evidence does not undermine the strength of the case presented below. Because a "burglary is a crime of stealth, dependence must be placed in most cases upon circumstantial evidence." (*People v. Jordan* (1962) 204 Cal.App.2d 782, 786.) As long as the circumstantial evidence is substantial, it "'is sufficient to support the judgment of guilty.'" (*Ibid*.)

     5.  <u>Count 29 (grand theft of two Bank of America Visa cards belonging to Kang)</u>.

The evidence was sufficient to establish that defendant committed grand theft of Kang's credit cards because it demonstrated possession and tended to corroborate guilt. His credit cards were stolen from his vehicle while it was parked in the garage attached to his apartment building in Westwood on November 12, 2009. Along with credit cards belonging to other victims, one of Kang's credit cards was found in the card holder in the center console of Austin's BMW. Kang's other credit card was found in the blue jeans in the trunks. The theft of Kang's credit cards matched defendant's modus operandi, and defendant's possession of other stolen items bolstered the inference that he stole Kang's credit cards.

**E.  Counts 12 and 24 (violation of section 530.5, subd. (a)—identity theft of Vaal through the use of her American Express card and identity theft of Beardsley through the use of her Citibank Visa card)**

The prosecutor argued that count 12 was supported by defendant's use of Vaal's American Express card at Whole Foods at 6:04 p.m. on November 21, 2009, for $14.16. Defendant argues that while surveillance video showed him using that card at Whole Foods on an earlier date, there is insufficient evidence that he used it on November 21, 2009. This argument lacks merit. Because the police found the card in a metal card holder under the front passenger seat where defendant was sitting in the blue Mazda, the jury permissibly inferred that he possessed the card from the time he stole and used it on

the earlier date to the time it was recovered. Thus, the jury permissibly inferred that defendant used the card in the interim at a store where he had used the card only days before.

The prosecutor argued that count 24 was supported by defendant's use of Beardsley's Citibank Visa card on November 22, 2009, at Whole Foods, FedEX Kinkos and DVD Play. Contrary to defendant's position, the evidence supported his conviction. Beardsley's card was stolen on November 22, 2009. On November 24, 2009, the police recovered her credit card as well as others from under the front passenger seat where defendant was sitting in the blue Mazda. The jury was entitled to infer that defendant stole and possessed all of those cards. Further, it was permissible for the jury to conclude that defendant used Beardsley's card and stole her identity on November 22, 2009.

**F. Counts 19, 23, 25, 27, 28 and 34 (violation of section 459—burglary of vehicles belonging to Davis, Beardsley, Olsen, Kang and Shelvin).**

Defendant argues that "[t]here was absolutely no evidence that [he] enter[e]d any of the cars [belonging to Davis, Beardsley, Olsen, Kang and Shelvin] or the apartment building of Kang or that [defendant] was in the area at the time the cars were burglarized." This argument lacks merit. Defendant was found in possession of property stolen from the vehicles belonging to these victims. Moreover, as we have indicated, the evidence showed that defendant was an auto burglar who operated in the same Westwood vicinity where the burglaries in question took place. The jury needed nothing more to convict.

18

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, Acting P. J.
         ASHMANN-GERST

We concur:

_____, J.
        CHAVEZ

_____, J.[*]
        FERNS

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.