Filed 4/9/14  P. v. Madrid CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C073709 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F04741) |
| v. | |
| CARLOS MADRID, | |
| Defendant and Appellant. | |

A jury convicted defendant Carlos Madrid of four counts of lewd and lascivious acts on a child under the age of 14 (Pen. Code, § 288, subd. (a)—counts one through four),[1] but could not reach a verdict on two additional counts alleging the same offense

---

[1] Undesignated statutory references are to the Penal Code in effect at the time of defendant's crimes.

(counts five & six), as to which the trial court declared a mistrial.  The jury found true that defendant committed the alleged offenses against two or more victims.  (§ 667.61, subd. (e)(4).)

Sentenced to a state prison term of 60 years to life, defendant contends (1) insufficient evidence supports the verdict on count three because a reasonable trier of fact could not have concluded beyond a reasonable doubt that the incident alleged in that count occurred within the specified time period, and (2) the fine imposed by the trial court pursuant to section 243.4 was unauthorized because that provision applies only where a defendant is convicted of sexual battery.  Agreeing only with defendant's second contention, we shall order the judgment modified by striking the fine and affirm as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

The amended information charged that counts one and two were committed against R.R. on or about and between February 6, 2004, and February 6, 2006; counts three and four were committed against her cousin L.R. on or about and between January 1, 2006, and December 31, 2006; and counts five and six were committed against defendant's niece, M.G., on or about and between January 14, 2008, and December 4, 2010.  As no verdict could be reached as to counts five and six, to which a mistrial was declared, we do not recount the testimony of R.R. and L.R. relating to M.G.  And M.G.'s testimony is not necessary to understand defendant's contention regarding count three.

### R.R.'s Testimony (Counts One & Two)

We recount briefly some testimony from R.R. to provide context for L.R.'s testimony concerning count three, which is at issue on appeal.

R.R., born in February 1997, was 16 years old at the time of trial.  Her father was a pastor (the pastor) at different churches when she was growing up.  She had three sisters, one of whom was 33 years old at the time of trial and married to defendant.

2

Defendant was the choir director and pianist at their father's church.  L.R., the alleged victim in counts three and four, was R.R.'s cousin.

Defendant married into R.R.'s family when she was four years old, but she had known him even before then.  Before the charged incidents occurred, R.R. loved and admired him.  The charged incidents involving R.R. began when she was seven years old.  The incidents occurred at the family's home, in the Sunday school classroom, and at defendant and R.R.'s older sister's house.

R.R. did not tell her older sister (defendant's wife) about these incidents, thinking no one would believe her and she would get in trouble.  But when she was 10 or 11 years old, she and her cousin L.R. (who was 11 months younger) started talking one night after L.R. had stayed over.  R.R. said defendant had touched her and kissed her, but did not mention everything he did because she was embarrassed.  L.R. said, "the same thing had happened to her, just less."

In November 2010, when R.R. was 13, another older sister (who was 26 at the time) asked R.R. if anyone had ever touched her improperly.  After "kind of freak[ing] out," she told that sister "not everything," but "what [defendant] had done to [her]."  That sister told their father.  R.R. then talked about it with her father and he called the police immediately.

### L.R.'s Testimony (Counts Three & Four)

L.R., born in early January 1998, was 15 years old at the time of trial.  She had known her cousin R.R. all her life.  Since moving to Sacramento at age five, she had always lived near R.R. and her family and saw them often, including R.R.'s sisters, the sister married to defendant, and defendant.  Her parents went to the church where her uncle (and R.R.'s father) was the pastor and defendant was the choir director and pianist.

3

One day when L.R. was "seven or eight" years old, she went to defendant's house.[2] Defendant asked her to go into the music room with him, saying he wanted to show her his piano. At first he played the piano, but then he sat facing away from it, put her on his lap, and started touching her. After "caressing" her thigh over her skirt, he put his other hand inside her shirt and touched her skin softly, first on the stomach and then on the chest. She was scared. Then he put both hands on her chest inside her shirt and kept them there. She told him she had to throw something away, got up, and left the room. Defendant's wife (L.R.'s cousin) was in the living room, but L.R. did not tell her what had happened.

"[M]aybe two or three months later," when (as L.R. recalled) she was eight years old, defendant's son asked her to come over and watch a movie with him in his room. As they watched, he fell asleep while she stayed awake. Defendant came into the room and sat on the bed, then lay down in the middle. As L.R. lay on her back, he put his hand over her clothes, "went into" her skirt and touched her legs, "went into" her underwear, and put his finger into her vagina as far as it could go. She was "shocked by the pain."

---

[2] At the preliminary hearing, the investigating officer testified that during L.R.'s special assault forensic evaluation (SAFE) at the SAFE center, she said she was eight years old when this event happened. However, when the officer testified at trial, after L.R. had testified, he was not asked how old she said she was during this incident.

The prosecutor began questioning L.R. about this incident as follows: "Was there a time when you were eight years old that something happened in a music room that wasn't okay?" L.R. answered, "Yes." Shortly afterward, the prosecutor asked, "And do you remember how old you were at that time?" L.R. answered, "Seven or eight."

After L.R. described the incident in the music room, the prosecutor asked, "And at that point in time you are about seven or eight years old?" L.R. answered, "Yes." The prosecutor asked, "So even at eight years old, you knew that was not a good proper touch?" L.R. answered, "Yes."

On cross-examination, defense counsel asked no questions about L.R.'s age at the time of the incident.

She told him she had to go to the bathroom. After she did so, she went out into the living room. Defendant's wife (L.R.'s cousin) was there, but again L.R. did not talk about what had happened, fearing defendant would do something to her if she told. L.R. never went to their house alone again.

L.R. did not tell her parents about what happened for fear they would not believe her; she also did not want to relive the experiences. But when she was nine or 10 years old, she told her cousin R.R., who said defendant had done the same things to her.[3] L.R. said they should tell their parents, but they decided not to because they feared harming R.R.'s sister (defendant's wife), her children, and her marriage.

A couple of months later, after L.R. finished singing a song at church, defendant said "good job," then grabbed her by the waist and kissed her cheek as if he were trying to bite it. L.R. told her boyfriend and R.R. about it; her boyfriend said she needed to tell her mother, but she and R.R. still did not want to tell anyone because of their concerns about R.R.'s sister (defendant's wife).

Later that day, L.R.'s mother said defendant had told her L.R. should rejoin the choir and had offered to give L.R. a ride to choir practice whenever she needed one. L.R. finally confessed that she did not want to be around defendant because he had molested her. L.R.'s mother immediately went to tell L.R.'s father.

After L.R.'s mother told her father, he called his brother-in-law (the pastor). However, the charges were not reported to the police at that time. Eventually, L.R.'s mother told her that the pastor's family did not believe the charges, but thought that if they were true, God would punish defendant.

---

[3] However, L.R. was 12 or 13 before she learned the whole truth about what defendant had done to R.R. Until then, she knew only that "there was some touching."

Around December 2010, after hearing more details about R.R.'s experiences, L.R.'s mother started pressing R.R. to tell her parents (the pastor and his wife). A week later, L.R.'s mother threatened to tell them herself, hoping R.R. would do so first.

***Other Evidence***

L.R.'s mother testified that her family had attended her brother-in-law's church for 10 years and that he was married to her husband's sister. They had known the pastor and his family, including defendant, for a long time. She had trusted defendant enough to let L.R. go to his home alone. But several years prior—"more or less" in 2008, when L.R. was eight—L.R. told her defendant had done something to her. L.R.'s mother got very angry and went to the pastor to get defendant removed from the choir. Defendant came to her house and apologized although he denied any wrongdoing. But she did not tell the police. She did not know why; she "was just dumb." Eventually, she learned that R.R. had said something about what was done to her, but had not been believed. When L.R. told her mother about it, she said she would talk to R.R.'s father (the pastor) if R.R. did not do so by a certain date.

In December 2010 the police were called to R.R.'s home to investigate the incidents, and R.R. and L.R. were each given a SAFE interview within two months.

Defendant did not testify or put on evidence. His counsel made an oral section 1118.1 motion, which was not reported; the trial court denied it. Defense counsel argued to the jury that there was insufficient evidence to support any count, but did not assert that any of the alleged events could not have happened within the time periods pleaded in the amended information.

6

## DISCUSSION

### I. Sufficiency of the Evidence—Count Three

Defendant contends insufficient evidence supports the verdict on count three (the lewd and lascivious act allegedly committed on L.R. in the music room of defendant's home on or about and between January 1, 2006, and December 31, 2006). He reasons that (1) L.R. was born in January 1998, which would make her birthday in January 2006 her eighth birthday; (2) L.R. testified that the act charged in count three happened when she was "seven or eight" years old; (3) if she was seven years old at the time, the event must have happened in 2005, before the earliest date alleged in the information; (4) no other evidence established that the event occurred in 2006; (5) therefore, no substantial evidence showed that the event happened on or after her birthday in January 2006, as pleaded. We conclude this contention is forfeited and, even if it is not forfeited, it lacks merit.

The claim of a variance between pleading and proof must be raised at trial, or it is forfeited. (*People v. Maury* (2003) 30 Cal.4th 342, 427.) Although defendant purports to raise an insufficient evidence argument, he does not argue that there was insufficient evidence he committed the act charged in count three. He argues only that the proof at trial as to *when* he committed the act varied from the pleading. Defendant fails to show that he raised this point below, either to the trial court or to the jury.[4] Therefore, the contention is forfeited.

But even assuming the contention is properly before us as an insufficient evidence claim (see *People v. Dowl* (2013) 57 Cal.4th 1079, 1089), it is unpersuasive.

---

[4] Defendant notes that the prosecutor amended the information to conform to proof during trial as to counts five and six, but not as to count three. But if neither the prosecutor nor the trial court saw any need to amend the information as to count three, that is all the more reason why it was incumbent on defendant to raise the point if he believed it to be valid.

We review a claim of insufficient evidence under the substantial evidence standard. We consider the evidence, including the reasonable inferences therefrom, in the light most favorable to the verdict, and affirm if a reasonable jury, so construing the evidence, could have returned that verdict. (*People v. Valdez* (2004) 32 Cal.4th 73, 104; *People v. Johnson* (1980) 26 Cal.3d 557, 578.) Here, a reasonable jury could have concluded from L.R.'s testimony at age 15 that she was eight years old at the time of the events charged in count three, even though she wavered as to her exact age when describing an act that allegedly took place at least seven years earlier. In any event, L.R.'s exact age at the time of the alleged offense was not material to the sufficiency of the evidence on count three.

"The precise time at which the offense was committed need not be stated in the accusatory pleading, but it may be alleged to have been committed at any time before the finding or filing thereof, except where the time is a material ingredient in the offense." (§ 955.)

"Where alibi is not a defense, the prosecution need only prove the act was committed before the filing of the information and within the period of the statute of limitations." (*People v. Obremski* (1989) 207 Cal.App.3d 1346, 1354 (*Obremski*).)

Where the evidence shows that an offense was committed, the evidence is not insufficient "merely because it shows the offense was committed on another date." (*People v. Peyton* (2009) 176 Cal.App.4th 642, 660 (*Peyton*).) At most, defendant's argument shows the possibility that his offense on count three was committed on a date outside the pleaded time period.

Furthermore, defendant has not shown how he was prejudiced by the alleged variance between pleading and proof. The specific time period alleged was not material to the charged offense (which required only proof that the victim was under 14), defendant does not allege any violation of the statute of limitations, and he did not raise

8

an alibi defense.  (See *Peyton*, *supra*, 176 Cal.App.4th at pp. 660-661; *Obremski*, *supra*, 207 Cal.App.3d at p. 1354.)

Defendant cites *People v. Allen* (1985) 165 Cal.App.3d 616 (*Allen*) and *People v. Smith* (2005) 135 Cal.App.4th 914 (*Smith*) for the proposition that when there are two possibilities equally consistent with the evidence, one pointing to guilt and the other to innocence, and only a "coin flip" could decide between them, the evidence is insufficient to prove guilt.  *Allen* and *Smith* are inapposite.

In *Allen*, the appellate court found insufficient evidence to prove one defendant rather than another had personally used a gun, where the evidence showed that both had been on the scene and did not show which was holding the gun.  (*Allen*, *supra*, 165 Cal.App.3d at p. 626.)  Similarly, in *Smith* the evidence failed to show that one of two defendants actually killed the victim or had the intent to kill, where there was no evidence conclusively placing that defendant, rather than the other defendant, on the scene when the victim was killed.  (*Smith*, *supra*, 135 Cal.App.4th at p. 927.)  Here, there is no possibility shown by the evidence that anyone other than defendant committed the charged acts.  And, as we have explained, the exact date when defendant did so is immaterial.

Sufficient evidence supports the verdict on count three.

## II.  Sexual Battery Fine

Defendant contends the trial court imposed an unauthorized $600 fine pursuant to section 243.4 (sexual battery), a crime of which he was not convicted, and that the fine must therefore be vacated.  The Attorney General concedes that the fine could not lawfully be imposed under section 243.4, but asserts that it was authorized because it could lawfully have been imposed under section 288, subdivision (e), and that defendant has forfeited the contention by not objecting below.  Defendant has the better argument.

9

A person convicted of sexual battery may be fined up to $2,000 if the offense is a misdemeanor, or up to $10,000 if it is a felony. (§ 243.4, subds. (a)-(e).) But that offense was not charged or proved in this case. Therefore, the trial court could not lawfully impose a fine under that statute. (See *People v. Zito* (1992) 8 Cal.App.4th 736, 741-742.) Where a fine is unauthorized, the objection is not forfeited by failure to raise it in the trial court. (See *People v. Scott* (1994) 9 Cal.4th 331, 353.)

The Attorney General points out that under section 288, subdivision (e), the trial court may impose a fine of up to $10,000 for any conviction of section 288, subdivision (a), as here. But the Attorney General does not cite authority holding that it does not matter if the trial court imposed a fine under an inapposite provision because the fine could have been imposed under an apposite provision, and we know of no such authority. Thus, the Attorney General's assertion that "the fine was authorized," even though imposed under a statute that does not authorize it, is incorrect as a matter of law.

We shall order the judgment modified to strike the sexual battery fine.

## DISPOSITION

The judgment is modified by striking the fine under section 243.4 and, as so modified, is affirmed. The trial court is directed to prepare an amended abstract of judgment that deletes the $600 sexual battery fine (item No. 12, p. 2) and forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

                                                              BUTZ                    , J.

We concur:

        NICHOLSON        , Acting P. J.


        HULL                   , J.

10